**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PACIRA PHARMACEUTICALS, INC. and PACIRA BIOSCIENCES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE WHITEOAK GROUP, INC., APOTEX CORP., QILU PHARMACEUTICAL (HAINAN) CO., LTD., and QILU PHARMA, INC., <br><br> Defendants. | C.A. No. _____ |

**PLAINTIFFS PACIRA PHARMACEUTICALS, INC. AND PACIRA BIOSCIENCES, INC.'S COMPLAINT AGAINST THE WHITEOAK GROUP, INC., APOTEX CORP., QILU PHARMACEUTICAL (HAINAN) CO., LTD., AND QILU PHARMA, INC.**

Plaintiffs Pacira Pharmaceuticals, Inc. and Pacira BioSciences, Inc. (together, "Pacira" or "Plaintiffs") for their complaint against defendants, The WhiteOak Group, Inc. ("WGI"), Apotex Corp. ("Apotex"), Qilu Pharmaceutical (Hainan) Co., Ltd. ("Qilu Hainan Ltd."), and Qilu Pharma, Inc. ("Qilu Inc.") (collectively, "Defendants"), to the best of their knowledge, information and belief, allege as follows:

**PRELIMINARY STATEMENT**

1.    This case is about EXPAREL® (bupivacaine liposome injectable suspension) ("EXPAREL"), a non-opioid analgesic that effectively manages post-operative pain.  By employing Pacira's patented technologies for encapsulating an anesthetic within multivesicular liposomes, EXPAREL's extended-release characteristic has enabled millions of patients to navigate the acute post-surgical pain experience and avoid exposure to highly addictive opioids.

2.      Pacira's patented technology is the product of years of research and tens of millions of dollars of investment.  Pacira comes to this litigation with new patent claims in three groups of patents across two patent families.  One group of patents, defined below in Paragraph 60 and discussed herein as the "Erucic Acid Patents," is directed to novel aspects of EXPAREL and the innovative methods of manufacturing EXPAREL.  These patents teach improvements to long-term stability, as measured by the concentration of erucic acid.  Included in this group is U.S. Patent No. 11,033,495 ("the '495 Patent"), which was closely reviewed during a previous litigation in the District of New Jersey against generic eVenus Pharmaceuticals Laboratories Inc. and has gone through *Ex Parte* Reexamination, emerging with eighty-eight new claims.  In the same vein, Pacira also asserts new patents in the Erucic Acid Patents family that were allowed by the United States Patent Office in view of the fulsome review the '495 Patent received in the prior litigation and/or reexamination process.  Pacira asserts U.S. Patent No. 12,318,483 ("the '483 Patent"), defined below in Paragraph 91 and discussed herein as the "Method of Treatment Patent," that addresses methods of treating post-surgical pain through the administration of EXPAREL.  And finally, Pacira also asserts patents from an entirely new patent family, defined below in Paragraph 97 and discussed herein as the "*In Vitro* Release Assay ("IVRA") Patents", that address the number one reason EXPAREL batches fail—*in vitro* release.

3.      Defendants seek to market generic versions of EXPAREL, which, on information and belief and further detailed below, would infringe Pacira's patented technology.

## NATURE OF THE ACTION

4.      This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. § 271(e)(2), the Drug Price Competition and Patent Term Restoration Act of 1984; 21 U.S.C. § 355(j) (the "Hatch-Waxman Act"); and the Declaratory

Judgment Act, 28 U.S.C. §§ 2201 and 2202, that arises out of submissions by Defendants of Abbreviated New Drug Applications ("ANDAs") to the U.S. Food and Drug Administration ("FDA") seeking approval to commercially manufacture, use, offer for sale, sell, and/or import purported generic versions of EXPAREL (bupivacaine liposome injectable suspension), New Drug Application ("NDA") No. 022496, prior to the expiration of U.S. Patent Nos. 11,033,495 ("the '495 Patent"), 11,819,574 ("the '574 Patent), 12,144,890 ("the '890 Patent"), 12,151,024 ("the '024 Patent"), 12,156,940 ("the '940 Patent"), 12,251,468 ("the '468 Patent"), 12,296,047 ("the '047 Patent"), 12,318,483 ("the '483 Patent"), and 12,370,142 ("the '142 Patent")  (collectively, the "Patents-in-Suit").  Pacira seeks injunctive relief precluding infringement, its attorneys' fees, and any other relief the Court deems just and proper.

## THE PARTIES

5.     Plaintiff Pacira Pharmaceuticals, Inc. is a corporation organized and existing under the laws of California, with its principal place of business at 2000 Sierra Point Parkway, Suite 900, Brisbane, California, 94005.

6.     Plaintiff Pacira BioSciences, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 2000 Sierra Point Parkway, Suite 900, Brisbane, California, 94005.

7.     On information and belief, Defendant The WhiteOak Group, Inc. ("WGI") is a corporation operating and existing under the laws of Delaware, having a principal place of business at 7529 Standish Place, Suite 330, Rockville, Maryland, 20855.

8.     On information and belief, Defendant WGI is in the business of, among other things, manufacturing, promoting, marketing, selling, offering for sale, using, distributing, and importing into the United States, generic versions of branded pharmaceutical drugs for the U.S. market.

9.      On information and belief, Defendant Apotex Corp. ("Apotex") is a corporation operating and existing under the laws of Delaware, having a principal place of business at 2400 N. Commerce Parkway, Suite 400, Weston, Florida, 33326.

10.     On information and belief, Defendant Apotex is in the business of, among other things, manufacturing, promoting, marketing, selling, offering for sale, using, distributing, and importing into the United States, generic versions of branded pharmaceutical drugs for the U.S. market.  On information and belief, the acts of Defendant WGI complained of herein were done with the cooperation, participation, and assistance of Apotex.

11.     On information and belief, Apotex is WGI's United States agent.  On information and belief, by and through the relationship between Defendants WGI and Apotex, and on behalf of WGI, Apotex submitted the ANDA complained of herein.

12.     On information and belief, Defendant Qilu Pharmaceutical (Hainan) Co., Ltd. ("Qilu Hainan Ltd.") is a corporation operating and existing under the laws of China, having a principal place of business at No. 273-A, Nanhai Avenue, National High-Tech Zone, Haikou, Hainan 570314, China.

13.     On information and belief, Defendant Qilu Hainan Ltd. is in the business of, among other things, manufacturing, promoting, marketing, selling, offering for sale, using, distributing, and importing into the United States, generic versions of branded pharmaceutical drugs for the U.S. market.

14.     On information and belief, Defendant Qilu Pharma, Inc. ("Qilu Inc.") is a corporation operating and existing under the laws of Pennsylvania, having a principal place of business at 101 Lindenwood Drive, Suite 225, Malvern, Pennsylvania, 19355.

15.     On information and belief, Defendant Qilu Inc. is in the business of, among other things, manufacturing, promoting, marketing, selling, offering for sale, using, distributing, and importing into the United States, generic versions of branded pharmaceutical drugs for the U.S. market.  On information and belief, the acts of Defendant Qilu Hainan Ltd. complained of herein were done with the cooperation, participation, and assistance of Qilu Inc.

16.     On information and belief, Qilu Inc. is Qilu Hainan Ltd.'s United States agent.  On information and belief, by and through the relationship between Defendants Qilu Hainan Ltd. and Qilu Inc., and on behalf of Qilu Hainan Ltd., Qilu Inc. submitted the ANDA complained of herein.

17.     By a letter dated October 15, 2025 ("WGI Notice Letter"), Defendants WGI and Apotex notified Pacira that they had submitted to the FDA ANDA No. 220735 ("WGI's ANDA") for a purported generic version of bupivacaine liposome injectable suspension ("WGI's ANDA Product"), seeking FDA approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of WGI's ANDA Product in or into the United States, including Delaware, prior to the expiration of the Patents-in-Suit.  As further discussed below, the WGI Notice Letter was deficient and incorporated numerous misstatements about the litigation history of Pacira's patents, and when counsel for Pacira notified counsel for WGI and Apotex of the issues with the WGI Notice Letter, WGI and Apotex sent a supplemental notice letter to Pacira dated November 7, 2025 (the "Supplemental WGI Notice Letter").

18.     On information and belief, Defendants WGI and Apotex work in collaboration with each other or through their subsidiaries, agents, and affiliates to manufacture, market, distribute, offer for sale, and sell generic versions of branded pharmaceutical products in the United States.  As part of that work, Defendants WGI and Apotex participate together in preparing and filing ANDAs with the FDA.  In conjunction with filing ANDAs with the FDA, Defendants WGI and Apotex also

cooperate in filing certifications pursuant to Section 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug, and Cosmetic Act ("Paragraph IV Certifications") to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of generic drug products prior to the expiration of United States patents that cover such branded pharmaceutical products.

19.    On information and belief, Defendants WGI and Apotex acted in concert to prepare and submit WGI's ANDA and the WGI Notice Letter.

20.    On information and belief, Defendants WGI and Apotex know and intend that upon approval of WGI's ANDA, WGI and/or Apotex will manufacture, promote, market, sell, offer for sale, import, use, and/or distribute WGI's ANDA Product throughout the United States, including Delaware.  On information and belief, Apotex is WGI's United States agent, including with respect to WGI's ANDA and WGI's ANDA Product.

21.    On information and belief, following any FDA approval of WGI's ANDA, Defendants WGI and Apotex will act in concert to manufacture, promote, market, sell, offer for sale, import, use and/or distribute WGI's ANDA Product throughout the United States, including Delaware.

22.    By a letter dated October 20, 2025 ("Qilu Notice Letter"), Defendants Qilu Hainan Ltd. and Qilu Inc. notified Pacira that they had submitted to the FDA ANDA No. 220830 ("Qilu's ANDA") for a purported generic version of bupivacaine liposome injectable suspension ("Qilu's ANDA Product"), seeking FDA approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of Qilu's ANDA Product in or into the United States, including Delaware, prior to the expiration of the Patents-in-Suit.

23.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. work in collaboration with each other or through their subsidiaries, agents, and affiliates to manufacture,

market, distribute, offer for sale, and sell generic versions of branded pharmaceutical products in the United States.  As part of that work, Defendants Qilu Hainan Ltd. and Qilu Inc. participate together in preparing and filing ANDAs with the FDA.  In conjunction with filing ANDAs with the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc. also cooperate in filing Paragraph IV Certifications to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of generic drug products prior to the expiration of United States patents that cover such branded pharmaceutical products.

24.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. acted in concert to prepare and submit Qilu's ANDA and the Qilu Notice Letter.

25.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know and intend that upon approval of Qilu's ANDA, Qilu Hainan Ltd. and/or Qilu Inc. will manufacture, promote, market, sell, offer for sale, import, use, and/or distribute Qilu's ANDA Product throughout the United States, including Delaware.  On information and belief, Qilu Inc. is Qilu Hainan Ltd.'s United States agent, including with respect to Qilu's ANDA and Qilu's ANDA Product.

26.    On information and belief, following any FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will act in concert to manufacture, promote, market, sell, offer for sale, import, use and/or distribute Qilu's ANDA Product throughout the United States, including Delaware.

## JURISDICTION AND VENUE FOR WGI AND APOTEX

27.    Counts I through XVIII of this action arise under the patent laws of the United States, United States Code, Title 35, Section 1, *et seq*. and the Declaratory Judgment Act.  Based on the facts alleged herein, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

28.    This Court has personal jurisdiction over WGI because, among other things, WGI is an entity incorporated in Delaware, and WGI operates and exists under the laws of Delaware. WGI has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

29.    This Court has personal jurisdiction over Apotex because, among other things, Apotex is an entity incorporated in Delaware, and Apotex operates and exists under the laws of Delaware. Apotex has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court.

30.    On information and belief, Apotex, itself and through its affiliates, develops, manufactures, imports, markets, distributes, uses, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware related to Pacira's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

31.    Apotex has also previously availed itself of the jurisdiction of this Court by filing suit in this district, consenting to jurisdiction in this district, and/or asserting counterclaims in at least the following civil actions initiated in this district: *Urovant Sciences GmbH et al. v. Apotex Inc. et al.*, 1:25-cv-00372-GBW; *Sumitomo Pharma Switzerland GmbH et al. v. Apotex Inc. et al.*, 1:25-cv-00311-MN; *Vifor (Int'l) AG et al v. Apotex Inc. et al.*, 1:25-cv-00211-WCB; *Eagle Pharmaceuticals, Inc. v. Apotex Inc. et al.*, 1:25-cv-00074-JLH; *Vanda Pharmaceuticals Inc. v. Apotex Inc. et al.*, 1:24-cv-01344-JLH; *Otsuka Pharmaceutical Co., Ltd. et al. v. Apotex Inc. et al.*, 1:24-cv-01004-JLH; *Bristol-Myers Squibb Company et al v. Apotex Inc.*, 1:24-cv-00818-GBW; *Pfizer Inc. et al. v. Apotex, Inc. et al.*, 1:24-cv-00621-CFC; *Apotex Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc. et al.*, 1:24-cv-00577-MN; *AstraZeneca AB v. Apotex Inc. et al.*, 1:24-cv-00551-RGA; *Mitsubishi*

*Tanabe Pharma Corp. v. Apotex Inc. et al.*, 1:24-cv-00549-JLH; *Eagle Pharmaceuticals, Inc. v. Apotex Inc. et al.*, 1:24-cv-00064-JLH.

32.    Defendants WGI and Apotex have committed an act of patent infringement under 35 U.S.C. § 271(e)(2) and intend to manufacture, import, market, distribute, use, offer to sell, and/or sell WGI's ANDA Product in Delaware.  On information and belief, Defendants WGI and Apotex have participated in and collaborated on the preparation and filing of WGI's ANDA.

33.    On information and belief, Defendants WGI and Apotex sought FDA approval because they intend to commit acts of patent infringement under 35 U.S.C. § 271(a), (b), and (c) through their manufacturing, importation, marketing, distribution, use, offering to sell, and/or sale of WGI's ANDA Product in Delaware.

34.    On information and belief, Defendants WGI and Apotex have at all relevant times maintained continuous and systematic contacts with the State of Delaware.

35.    On information and belief, WGI's ANDA Product will be marketed and distributed in Delaware by Defendants WGI and/or Apotex, prescribed by physicians practicing in this state, and dispensed by pharmacies located in this state, all of which would have a substantial effect on commerce.

36.    Venue is proper in this district under 28 U.S.C. § 1400(b) because Defendants WGI and Apotex "committed acts of infringement" in this district and both Defendants WGI and Apotex "reside[]" in this district.  Defendants WGI and Apotex submitted an ANDA leading to FDA approval of WGI's ANDA Product, and, upon receiving such approval, will manufacture, import, market, distribute, use, offer to sell, and/or sell WGI's ANDA Product throughout the United States, including in this district.  In particular, Apotex also has a "regular and established place of business" in this district because of its pattern of litigation behavior, which largely takes place in this district

and is directed to obtaining approval for the manufacture of and distribution of drugs to Delaware residents through established channels in this district.

### JURISDICTION AND VENUE FOR QILU HAINAN LTD. AND QILU INC.

37.    Counts XIX through XXXVI of this action arise under the patent laws of the United States, United States Code, Title 35, Section 1, *et seq*. and the Declaratory Judgment Act. Based on the facts alleged herein, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

38.    This Court has personal jurisdiction over Qilu Inc. because, among other things, Qilu Inc. has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here. On information and belief, Qilu Inc. develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware related to Pacira's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

39.    This Court has personal jurisdiction over Qilu Hainan Ltd. because, among other things, Qilu Hainan Ltd. has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here. On information and belief, Qilu Hainan Ltd. develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware related to Pacira's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

40.    Defendants Qilu Hainan Ltd. and Qilu Inc. have previously used the process contemplated by the Hatch-Waxman Act to challenge branded pharmaceutical companies' patents

by filing a Paragraph IV Certification, serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

41.     On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., with knowledge of the Hatch-Waxman Act process, directed the Qilu Notice Letter to Pacira, including to Plaintiff Pacira BioSciences, Inc., an entity incorporated in Delaware, and alleged in the Qilu Notice Letter that Pacira's patents are invalid.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. knowingly and deliberately challenged Pacira's patent rights, and knew when it did so that it was triggering the forty-five day period for Pacira to bring an action for patent infringement under the Hatch-Waxman Act.

42.     Because Plaintiff Pacira BioSciences, Inc. is incorporated in Delaware, Pacira BioSciences, Inc. suffers injury and consequences from the filing of Qilu's ANDA, challenging Pacira's patent rights, in Delaware.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. knew that they were deliberately challenging the patent rights of a Delaware entity. Defendants Qilu Hainan Ltd. and Qilu Inc. have been litigants in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending the Qilu Notice Letter to Pacira BioSciences, Inc., a Delaware corporation, that they would be sued in Delaware for patent infringement.

43.     Qilu Hainan Ltd. and/or Qilu Inc. have also previously availed themselves of the jurisdiction of this Court by consenting to jurisdiction in this district and/or by asserting counterclaims in at least the following civil actions initiated in this district:  *Heron Therapeutics, Inc. v. Qilu Pharmaceutical Co., Ltd. et al*., 1:25-cv-00357-WCB; *Pfizer Inc. et al v. Qilu Pharmaceutical Co., Ltd. et al*., 1:21-cv-00929-CFC; *Pfizer Inc. et al v. Qilu Pharma, Inc. et al.*, 1:19-cv-00754-CFC; *Millennium Pharmaceuticals, Inc. v. Qilu Pharmaceutical Co., Ltd. et al*.,

1:17-cv-01830-CFC; *Onyx Therapeutics, Inc. v. Qilu Pharma, Inc. et al.*, 1:17-cv-01235-LPS; *Onyx Therapeutics, Inc. v. Qilu Pharma, Inc. et al.*, 1:16-cv-01013-LPS.

44.    Defendants Qilu Hainan Ltd. and Qilu Inc. have committed an act of patent infringement under 35 U.S.C. § 271(e)(2) and intend to manufacture, import, market, distribute, use, offer to sell, and/or sell Qilu's ANDA Product in Delaware.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have participated in and collaborated on the preparation and filing of Qilu's ANDA.

45.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. sought FDA approval because they intend to commit acts of patent infringement under 35 U.S.C. § 271(a), (b), and (c) through their manufacturing, importation, marketing, distribution, use, offering to sell, and/or sale of Qilu's ANDA Product in Delaware.

46.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have at all relevant times maintained continuous and systematic contacts with the State of Delaware.

47.    On information and belief, Qilu's ANDA Product will be marketed and distributed in Delaware by Defendants Qilu Hainan Ltd. and Qilu Inc., prescribed by physicians practicing in this state, and dispensed by pharmacies located in this state, all of which would have a substantial effect on commerce.

48.    Venue is proper in this district under 28 U.S.C. § 1400(b) because Defendants Qilu Hainan Ltd. and Qilu Inc. "committed acts of infringement" in this district.  Defendants Qilu Hainan Ltd. and Qilu Inc. submitted an ANDA leading to FDA approval of Qilu's ANDA Product, and, upon receiving such approval, will manufacture, import, market, distribute, use, offer to sell, and/or sell Qilu's ANDA Product throughout the United States, including in this district.

49.     Venue is also proper in this district as to Defendant Qilu Hainan Ltd. pursuant to 28 U.S.C. §§ 1391(c) and/or 1400(b) because Qilu Hainan Ltd. is a company organized and existing under the laws of China and may be sued in any judicial district.

50.     In the alternative, as to Defendant Qilu Hainan Ltd., this Court's exercise of personal jurisdiction is proper pursuant to Fed. R. Civ. P. 4.  On information and belief, Qilu Hainan Ltd. is a foreign company organized and existing under the laws of China, with a principal place of business in Hainan, China.

51.     This Court has personal jurisdiction over Defendant Qilu Hainan Ltd. because the requirements of Fed. R. Civ. P. 4(k)(2)(A) are met.  First, Pacira's claims arise under federal law. Second, Qilu Hainan Ltd. is a foreign defendant that is not subject to jurisdiction in any state's courts of general jurisdiction.  Third, Qilu Hainan Ltd. has sufficient contacts with the United States, including, for example, on information and belief, participating in the preparation and submission of Qilu's ANDA and/or manufacturing and/or selling pharmaceutical products distributed throughout the United States, including in this judicial district, such that this Court's exercise of jurisdiction over Qilu Hainan Ltd. satisfies due process.

52.     Litigation in the District of Delaware would not unduly burden Qilu Hainan Ltd.  The United States has a substantial interest in adjudicating the dispute and enforcing its patent laws, and Pacira has a substantial interest in obtaining convenient and effective relief for violations of its property interests.  Also, the States have a shared interest in the substantive policy of the intellectual property laws of the United States.

## BACKGROUND

### The FDA Marketing Approval Process

53.    The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq*., as amended by the Hatch-Waxman Amendments, sets forth the rules that the FDA follows when considering the approval of applications for both brand-name and generic drugs.

54.    Under the Hatch-Waxman Amendments, an applicant seeking to market a new brand-name drug must prepare an NDA for consideration by the FDA. *See* 21 U.S.C. § 355.

55.    An NDA must include, among other things, the patent number of any patent that claims the drug or a method of using such drug, for which the applicant submitted the NDA and for which a claim of patent infringement could reasonably be asserted against an unauthorized party. *See* 21 U.S.C. § 355(b)(1) and (c)(2); 21 C.F.R. §§ 314.53(b) and (c)(2).

56.    Upon approval of the NDA, the FDA publishes patent information for the approved drug in its publication, Approved Drug Products with Therapeutic Equivalence Evaluation ("Orange Book"). *See* 21 U.S.C. § 355(j)(7)(A)(iii).

57.    A pharmaceutical company may seek to market a generic version of the innovator's brand drug by submitting an ANDA under 21 U.S.C. § 355(j).  The generic company may then rely on the studies the innovator includes in its NDA.

### Pacira's EXPAREL Drug Product

58.    Pacira Pharmaceuticals, Inc. is the holder of the NDA No. 022496, under which the FDA approved the commercial marketing of EXPAREL on October 28, 2011, under Section 505(a) of the FDCA, 21 U.S.C. § 355(a).  EXPAREL is approved for single-dose infiltration into the surgical site to produce postsurgical analgesia.  Pacira distributes EXPAREL in the United States in 266 mg/20 mL (13.3 mg/mL) and 133 mg/10mL (13.3 mg/mL) strength single-dose vials.  A true

and correct copy of the current prescribing information for EXPAREL is attached as Exhibit A. Qilu's ANDA seeks approval for both dosages. WGI's ANDA, however, only seeks approval of the 266 mg/20 mL (13.3 mg/mL) dosage.

59.     EXPAREL, methods of manufacturing EXPAREL, as well as methods of treatment using EXPAREL, are covered by one or more claims of the Patents-in-Suit. The Patents-in-Suit have been listed in connection with NDA No. 022496 in the FDA's Orange Book.

## THE PATENTS-IN-SUIT

### The Erucic Acid Patents

60.     EXPAREL is a first-of-its-kind, single dose local anesthetic administered at the time of surgery to control pain and reduce or eliminate the use of opioids for acute postsurgical pain. United States Patent Numbers 11,033,495, 11,819,574, 12,144,890, 12,151,024, and 12,296,047 ("the Erucic Acid Patents") are directed to Pacira's scaled-up manufacturing process for EXPAREL.

61.     Prior to the Erucic Acid Patents, EXPAREL was commercially produced in batches up to 45 liters in size. Given the nature of EXPAREL—it is not a pill, nor a simple drug-containing solution—scale up is anything but straightforward. Instead, the applicable scientific literature suggested that simply maintaining quality when producing the product at a larger scale would be difficult. Pacira managed to scale up EXPAREL and improve quality. These advancements are found in the Erucic Acid Patents.

62.     EXPAREL is an injectable suspension, consisting of millions of microscopic, spherical multivesicular liposome ("MVL") particles. Each MVL particle comprises tens of thousands of chambers which contain the active ingredient, bupivacaine. Bupivacaine is encapsulated in MVLs allowing for gradual release of bupivacaine over time as the lipid membranes are absorbed, prolonging the action of bupivacaine. The administration of bupivacaine in an

encapsulated MVL at the surgical site can control pain for several days following a surgery.  Shown below is a cross-sectional diagram of an MVL, showing how each individual vesicle contains and releases bupivacaine:



Bupivacaine released from particle chambers

Particle chambers composed of lipid membranes

63.    The delivery mechanism of the drug and gradual release over several days reduces or eliminates the use of highly addictive opioids for acute postsurgical pain.  The delivery system also eliminates the need for catheters or pumps, decreasing cost and shortening hospital stay duration. This extended-release characteristic—which allows patients to cope with the most challenging 48 hours following surgery without opioids—is a significant advantage of EXPAREL.  Because of at least these unique features, EXPAREL has been viewed as a significant advance in the field of anesthesiology.

64.    MVL drug products like EXPAREL are challenging to make because they are inherently unstable during the manufacturing process.  The manufacturing process required to form the MVLs that comprise EXPAREL is very complex and involves multiple emulsion steps that must be performed under precisely controlled conditions.  Two of the process steps, and the conditions of those steps, are especially critical—the first and second emulsification steps.  Both steps require,

among other things, determining the process parameters needed to form the complex honeycomb structure that is the hallmark of MVLs.

65.     The first emulsion step comprises a mixture of aqueous and organic solutions to encapsulate water, bupivacaine, and lipid membranes, to form a solution of free-floating droplets suspended in oil.  These fragile droplets on their own, however, are not useful as a final product and must undergo a second emulsion.  During the second emulsion, an excess of an aqueous solution of dextrose (a sugar) and lysine is added to the first emulsion and mixed to create a final water-in-oil-in-water emulsion.  When the droplets from the first emulsion are combined with this large amount of aqueous solution during the second emulsion step, they are forced together to form the structure of the MVL.  But if the second emulsion step goes wrong, bupivacaine is lost to the external solution and forms precipitants, the product falls apart, and the batch must be aborted.

66.     But out of these challenges—solved through approximately 7 years of experimentation and tens of millions of development dollars—Pacira discovered unexpected advantages of the EXPAREL resulting from this scaled-up process.  For example, the second emulsion step, when done in a larger scale, unexpectedly led to a wider MVL particle size distribution, along with unexpectedly higher internal lysine concentration.  And while common manufacturing wisdom suggests that a narrow particle size distribution is preferred and that lysine encapsulation should be avoided, these batches nonetheless demonstrate better stability than those from Pacira's prior process, showing lower levels of lipid degradation products (e.g., erucic acid) after 6 months at 25 degrees Celsius (°C).

67.     United States Patent Number 11,033,495, entitled "Manufacturing of bupivacaine multivesicular liposomes," was duly and legally issued on June 15, 2021, and names Jeffrey S. Hall, David J. Turnbull, John J. Grigsby, Jr., Soroush M. Ardekani, Paige N. Davis, Louie D. Garcia,

Stephanie M. Kurz, and Kathleen D. A. Los as the inventors.  Attached as Exhibit B is a true and correct copy of the '495 Patent, as it was issued on June 15, 2021.

68.    The '495 Patent was asserted against eVenus Pharmaceuticals Laboratories, Inc., Jiangsu Hengrui Pharmaceuticals Co., Ltd., and Fresenius Kabi USA, LLC in C.A. No. 21-19829 in the United States District Court for the District of New Jersey in connection with ANDA No. 214348.  A trial was held regarding infringement, validity, and enforceability of claim 7 of the '495 patent in February 2024.  The Court found that claim 7 was invalid as anticipated and obvious. Pacira and eVenus settled this litigation (and several others) after Pacira filed its appeal brief at the Federal Circuit.  As part of the settlement, eVenus agreed to limited sales starting in 2030, with a complete launch delayed until 2039.  *See* Ex. D, Pacira BioSciences Announces Settlement of U.S. Patent Litigation for EXPAREL (Press Release), available at https://investor.pacira.com/news-releases/news-release-details/pacira-biosciences-announces-settlement-us-patent-litigation.

69.    Subsequent to that trial, the '495 Patent was the subject of an *ex parte* reexamination proceeding before the United States Patent and Trademark Office.  In that proceeding, one claim was canceled, and the examiner determined that the claims at issue (including 88 new claims) were patentable over all the art and information of record, including the art, arguments, and Court ruling from the District of New Jersey.  On August 19, 2025, the Patent Office issued an *ex parte* reexamination certificate including all the allowed claims, which is attached hereto as Exhibit C.

70.    The '495 Patent includes claims for preparing by a commercial scale process bupivacaine encapsulated in MVLs.

71.    Pacira Pharmaceuticals, Inc. is the owner and assignee of the '495 Patent and has the right to enforce the '495 Patent.

72.    The FDA's Approved Drug Product with Therapeutic Equivalence Evaluations ("Orange Book") currently lists the expiration of the '495 Patent as January 22, 2041.

73.    United States Patent Number 11,819,574, entitled "Manufacturing of bupivacaine multivesicular liposomes," was duly and legally issued on November 21, 2023, and names Jeffrey S. Hall, David J. Turnbull, John J. Grigsby, Jr., Soroush M. Ardekani, and Kathleen D. A. Los as the inventors.  Attached as Exhibit E is a true and correct copy of the '574 Patent.

74.    The '574 Patent includes claims for a process of preparing a batch of bupivacaine encapsulated MVLs.

75.    Pacira Pharmaceuticals, Inc. is the owner and assignee of the '574 Patent and has the right to enforce the '574 Patent.

76.    The FDA's Orange Book currently lists the expiration of the '574 Patent as January 22, 2041.

77.    United States Patent Number 12,144,890, entitled "Manufacturing of bupivacaine multivesicular liposomes," was duly and legally issued on November 19, 2024, and names Jeffrey S. Hall, David J. Turnbull, John J. Grigsby, Jr., Soroush M. Ardekani, and Kathleen D. A. Los as the inventors.  Attached as Exhibit F is a true and correct copy of the '890 Patent.

78.    The '890 Patent includes claims for a process of preparing a composition of bupivacaine encapsulated MVLs.

79.    Pacira Pharmaceuticals, Inc. is the owner and assignee of the '890 Patent and has the right to enforce the '890 Patent.

80.    The FDA's Orange Book currently lists the expiration of the '890 Patent as January 22, 2041.

81.     United States Patent Number 12,151,024, entitled "Manufacturing of bupivacaine multivesicular liposomes," was duly and legally issued on November 26, 2024, and names Jeffrey S. Hall, David J. Turnbull, John J. Grigsby, Jr., Soroush M. Ardekani, and Kathleen D. A. Los as the inventors.  Attached as Exhibit G is a true and correct copy of the '024 Patent.

82.     The '024 Patent includes claims for compositions of bupivacaine encapsulated MVLs.

83.     Pacira Pharmaceuticals, Inc. is the owner and assignee of the '024 Patent and has the right to enforce the '024 Patent.

84.     The FDA's Orange Book currently lists the expiration of the '024 Patent as January 22, 2041.

85.     United States Patent Number 12,296,047, entitled "Manufacturing of bupivacaine multivesicular liposomes," was duly and legally issued on May 13, 2025, and names Jeffrey S. Hall, David J. Turnbull, John J. Grigsby, Jr., Soroush M. Ardekani, and Kathleen D. A. Los as the inventors.  Attached as Exhibit H is a true and correct copy of the '047 Patent.

86.     The '047 Patent includes claims for a process of preparing a batch of bupivacaine encapsulated MVLs.

87.     Pacira Pharmaceuticals, Inc. is the owner and assignee of the '047 Patent and has the right to enforce the '047 Patent.

88.     The FDA's Orange Book currently lists the expiration of the '047 Patent as January 22, 2041.

**The Method of Treatment Patent**

89.    As discussed above, EXPAREL is a first-of-its-kind, single dose local anesthetic administered at the time of surgery to control pain and reduce or eliminate the use of opioids for acute postsurgical pain.

90.    Pursuant to its labeling approved by FDA, EXPAREL is indicated to produce postsurgical local analgesia via infiltration in patients aged 6 years and older, regional analgesia via an interscalene brachial plexus nerve block in adults, regional analgesia via a sciatic nerve block in the popliteal fossa in adults, and regional analgesia via an adductor canal block in adults.  Ex. A.

91.    United States Patent Number 12,318,483, entitled "Manufacturing of bupivacaine multivesicular liposomes," was duly and legally issued on June 3, 2025, and names Eran Levy, Jeffrey S. Hall, and John J. Grigsby, Jr. as the inventors.  Attached as Exhibit I is a true and correct copy of the '483 Patent.

92.    The '483 Patent includes claims for methods of treating pain by administering to a subject a composition of bupivacaine encapsulated MVLs.

93.    Pacira Pharmaceuticals, Inc. is the owner and assignee of the '483 Patent and has the right to enforce the '483 Patent.

94.    The FDA's Orange Book currently lists the expiration of the '483 Patent as July 2, 2044.

**The _In Vitro_ Release Assay ("IVRA") Patents**

95.    As discussed above with respect to the Erucic Acid Patents, MVL drug products like EXPAREL are challenging to make because they are unstable during the manufacturing process. The EXPAREL manufacturing process is complex and involves multiple emulsion steps that must be performed under precisely controlled conditions.

96.     Given these manufacturing complexities and the complex nature of the drug itself, EXPAREL is subject to batch-by-batch testing to ensure consistency and quality as provided in the NDA.  One of those tests is the in vitro release assay ("IVRA").  The IVRA test examines the extended-release characteristic—the essential feature of EXPAREL.  Failure of the IVRA test is the most common reason why EXPAREL batches fail and are rejected.  Improvement in IVRA outcomes increases EXPAREL drug quality, manufacturing yield, and consistency.

97.     The new process described in United States Patent Numbers 12,156,940, 12,251,468, and 12,370,142 ("the IVRA Patents") can provide larger batch sizes with an average yield of 82%—a 37% increase from a prior process.  The new process can also produce EXPAREL with an improved *in vitro* release stability profile compared to the products made by prior processes.

98.     In one study, five batches of EXPAREL produced by an embodiment of the new process were stored at 5°C for about 12 months after the batch manufacture date.  An IVRA test was performed at 0 months, about 3 months, about 6 months, about 9 months, and about 12 months.  The average rates of change in cumulative percentage release of bupivacaine at 24 hours and 48 hours were compared to that of batches of EXPAREL produced by two older processes.  The results are summarized in Table 1 of the specification of the IVRA Patents:

**Table 1. Average rate of change in % bupivacaine release comparison**

| Sample | 24-hour | 48-hour |
|---|---|---|
| Batch Nos. 1-5 average | 0.32%/month | 0.02%/month |
| 45 L batches average | -0.41%/month | -0.38%/month |
| UK 200 L batches | -0.20%/month | -0.33%/month |

99.     Figure 3A of the specification of the IVRA Patents is a line chart illustrating the average rate of change in cumulative percentage release of bupivacaine at the 24-hour time point as

a function of time over 12 months, comparing the batch samples produced by the new process with the batch samples produced by two older processes. Figure 3B of the specification of the IVRA Patents is a line chart illustrating the average rate of change in cumulative percentage release of bupivacaine at the 48-hour time point as a function of time over 12 months, comparing batch samples produced by the new process with batch samples manufactured by the two older processes.

**Figure 3A**



**Figure 3B**



100.    Figures 3A and 3B indicate that the batches generated by the new process have improved IVRA stability profiles as compared to those produced by the older processes.  The slope lines for the batches generated by the new process are either flat (48-hour) or trend slightly upward (24-hour).  In contrast, the slope lines for the batches generated by the older processes trend downward at both the 24-hour and 48-hour time points.  The flatter the trend line illustrating the rate of change in the cumulative percentage release of bupivacaine in the first 12 months, the more likely that the product will meet the IVRA specification during the entire 24 months.  Furthermore, a slope line that trends upwards in the first 12 months can also compensate for the expected decrease in the percentage release in the second 12 months.  Therefore, the EXPAREL batches made from the new process of the IVRA Patents are much more likely to meet the IVRA specification during the entire shelf life of the product.

101.    United States Patent Number 12,156,940, entitled "Manufacturing of bupivacaine multivesicular liposomes," was duly and legally issued on December 3, 2024, and names Eran Levy, Jeffrey S. Hall, and John J. Grigsby, Jr. as the inventors.  Attached as Exhibit J is a true and correct copy of the '940 Patent.

102.    The '940 Patent includes claims for batches comprising compositions of bupivacaine encapsulated MVLs and using, *inter alia*, a IVRA.

103.    Pacira Pharmaceuticals, Inc. is the owner and assignee of the '940 Patent and has the right to enforce the '940 Patent.

104.    The FDA's Orange Book currently lists the expiration of the '940 Patent as July 2, 2044.

105.    United States Patent Number 12,251,468, entitled "Manufacturing of bupivacaine multivesicular liposomes," was duly and legally issued on March 18, 2025, and names Eran Levy, Jeffrey S. Hall, and John J. Grigsby, Jr. as the inventors.  Attached as Exhibit K is a true and correct copy of the '468 Patent.

106.    The '468 Patent includes claims for batches comprising compositions of bupivacaine encapsulated MVLs and using, *inter alia*, a IVRA.

107.    Pacira Pharmaceuticals, Inc. is the owner and assignee of the '468 Patent and has the right to enforce the '468 Patent.

108.    The FDA's Orange Book currently lists the expiration of the '468 Patent as July 2, 2044.

109.    United States Patent Number 12,370,142, entitled "Manufacturing of bupivacaine multivesicular liposomes," was duly and legally issued on July 29, 2025, and names Eran Levy,

Jeffrey S. Hall, and John J. Grigsby, Jr. as the inventors. Attached as Exhibit L is a true and correct copy of the '142 Patent.

110. The '142 Patent includes claims for a process of preparing batches of bupivacaine encapsulated MVLs and using, *inter alia*, a IVRA.

111. Pacira Pharmaceuticals, Inc. is the owner and assignee of the '142 Patent and has the right to enforce the '142 Patent.

112. The FDA's Orange Book currently lists the expiration of the '142 Patent as July 2, 2044.

## WGI AND APOTEX'S SUBMISSION OF WGI'S ANDA

113. On information and belief, Defendants WGI and Apotex have submitted or caused the submission of WGI's ANDA to the FDA under 21 U.S.C. § 355(j), to obtain approval to engage in the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of WGI's ANDA Product, a purported generic version of EXPAREL, prior to the latest expiration of the Patents-in-Suit.

114. On information and belief, the FDA has not yet approved WGI's ANDA.

115. In the WGI Notice Letter, Defendants WGI and Apotex notified Pacira of the submission of WGI's ANDA to the FDA. The purpose of this submission was to obtain approval under the FDCA to engage in the commercial manufacture, use, or sale of WGI's ANDA Product prior to the latest expiration of the Patents-in-Suit.

116. In the WGI Notice Letter, Defendants WGI and Apotex acknowledged that the Reference Listed Drug for WGI's ANDA is EXPAREL.

117.    In the WGI Notice Letter, Defendants WGI and Apotex also notified Pacira that, as part of their ANDA, WGI and Apotex had filed a Paragraph IV Certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), with respect to the Patents-in-Suit.

118.    On information and belief, Defendants WGI and Apotex submitted their ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the each of the Patents-in-Suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product.

119.    In the WGI Notice Letter, Defendants WGI and Apotex stated that WGI's ANDA Product contains bupivacaine as an active ingredient.

120.    Despite the duty of care owed by ANDA applicants under the Hatch-Waxman Act, Defendants WGI and Apotex failed to meet this duty of care when asserting numerous false and baseless certifications in the WGI Notice Letter.

121.    For example, the WGI Notice Letter purports to contain a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) claiming that the asserted '495 Patent is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product.  However, the WGI Notice Letter and Defendants WGI and Apotex's certification to the '495 Patent failed to recognize the current claims of the '495 Patent, of which a reexamination certificate was issued on August 19, 2025, amending claim 8 to correct a typographical error and specifying new claims 23-110.  Ex. C.  The WGI Notice Letter thus failed to provide a detailed statement that describes, on a claim-by-claim basis, the factual and legal basis of Defendants WGI and Apotex's opinion that the '495 Patent is invalid, unenforceable, or will not be infringed by WGI's ANDA Product, as required by 21 C.F.R. § 314.95(c)(7).

122.    Moreover, regarding the '495 Patent, the WGI Notice Letter referenced a prior Court opinion regarding the '495 Patent and mischaracterized or fabricated that Court's findings regarding the '495 Patent and its validity.  For example, the WGI Notice Letter asserted that the prior Court held "all claims" of the '495 Patent to be anticipated by prior art when, in fact, only a single claim of the '495 Patent was at issue in the referenced prior litigation.  The WGI Notice Letter made a similarly fabricated assertion regarding the alleged obviousness of the claims of the '495 Patent.

123.    The WGI Notice Letter also asserted that the prior Court's findings render Pacira's patents unenforceable for alleged inequitable conduct, despite the fact that the prior Court never addressed inequitable conduct.  Specifically, the WGI Notice Letter made unsubstantiated assertions regarding enforceability—including by fabricating quotations from the prior Court's opinion— concerning at least the presently asserted '495 Patent and '047 Patent, in violation of Defendants WGI and Apotex's duty of care and obligations when making certifications under the Hatch-Waxman Act.

124.    Included in the WGI Notice Letter is an Offer of Confidential Access to ANDA No. 220735.  The terms of the proposed Offer would not allow Pacira to conduct a complete and full investigation of the information contained in the ANDA and of the representations about WGI's ANDA Product that appear in the WGI Notice Letter.  For example, the Offer would not allow in-house counsel or an in-house scientist for Pacira to review the ANDA and only obligates Defendants WGI and Apotex to produce "certain information" from WGI's ANDA rather than producing the entire ANDA.  Thus, Pacira could not agree to the terms of the original Offer of Confidential Access.

125.    On October 17, 2025, counsel for Pacira sent a letter to counsel for Defendants WGI and Apotex in an attempt to negotiate the terms of Pacira's access to ANDA No. 220735.  Counsel for Defendants WGI and Apotex responded offering access to WGI's ANDA for a single

representative from Pacira, but imposing unreasonable restrictions for obtaining such access, and refusing access to WGI's ANDA for an in-house scientist from Pacira. The parties exchanged several additional letters, but were not able to reach an agreement regarding access to ANDA No. 220735 prior to the expiry of the time period set forth in 21 U.S.C. § 355(j)(5)(B)(iii). Pacira thus makes these allegations based on information and belief, the laws and regulations regarding generic drugs, the WGI Notice Letter, and any supplements thereto.

126.    In the letter dated October 17, 2025 sent to counsel for Defendants WGI and Apotex, counsel for Pacira also addressed the offending assertions in the WGI Notice Letter discussed above. In response, by a letter dated November 7, 2025 ("Supplemental WGI Notice Letter"), Defendants WGI and Apotex notified Pacira that they had submitted a supplemental Paragraph IV Certification in connection with ANDA No. 220735.

127.    In the Supplemental WGI Notice Letter, Defendants WGI and Apotex notified Pacira that, as part of their ANDA, Defendants WGI and Apotex had filed a supplemental Paragraph IV Certification pursuant to 21 U.S.C. § 355(j)(2)(B)(ii), with respect to the asserted '495 Patent.

128.    On information and belief, Defendants WGI and Apotex made a supplemental submission to the FDA containing a supplemental certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the '495 Patent, following its reexamination by the U.S. Patent and Trademark Office, is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product.

129.    Because WGI's ANDA Product has not yet been approved by FDA and is not yet commercially available, Pacira is not aware of any other means for obtaining information about WGI's ANDA Product other than pursuant to an Offer of Confidential Access from Defendants WGI and Apotex. In the absence of additional information, Pacira resorts to the judicial process and the

aid of discovery to obtain, under appropriate judicial safeguards, such information as is required to confirm its allegations of infringement and present to the Court evidence that WGI's ANDA Product infringes one or more claims of the Patents-in-Suit.

130.    On information and belief, Apotex is WGI's United States agent.  On information and belief, Defendants WGI and Apotex, through their own actions and through the actions of their agents, affiliates, and subsidiaries, prepared and submitted WGI's ANDA to the FDA, and intend to further prosecute WGI's ANDA.

131.    On information and belief, if the FDA approves WGI's ANDA, Defendants WGI and/or Apotex will manufacture, distribute, promote, market, offer for sale, or sell WGI's ANDA Product within the United States, or will import WGI's ANDA Product into the United States.  On information and belief, if the FDA approves WGI's ANDA, Defendants WGI and Apotex, through their own actions and through the actions of their agents, affiliates, and subsidiaries, will actively induce or contribute to the manufacture, use, offer for sale, sale, or importation of WGI's ANDA Product in or into the United States.

132.    Pacira brings this action within forty-five days of receipt of the WGI Notice Letter. Accordingly, Pacira is entitled to a stay of FDA approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

133.    Moreover, because the WGI Notice Letter was deficient at least for failing to comply with 21 C.F.R. § 314.95(c)(7), as discussed above, requiring Defendants WGI and Apotex to provide notice to Pacira in the Supplemental WGI Notice Letter, Pacira is entitled to a 30-month stay of FDA approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii) from the date of the Supplemental WGI Notice Letter.

## QILU HAINAN LTD. AND QILU INC.'S SUBMISSION OF QILU'S ANDA

134.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have submitted or caused the submission of Qilu's ANDA to the FDA under 21 U.S.C. § 355(j), to obtain approval to engage in the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of Qilu's ANDA Product, a purported generic version of EXPAREL, prior to the latest expiration of the Patents-in-Suit.

135.    On information and belief, the FDA has not yet approved Qilu's ANDA.

136.    In the Qilu Notice Letter, Defendants Qilu Hainan Ltd. and Qilu Inc. notified Pacira of the submission of Qilu's ANDA to the FDA.  The purpose of this submission was to obtain approval under the FDCA to engage in the commercial manufacture, use, or sale of Qilu's ANDA Product prior to the latest expiration of the Patents-in-Suit.

137.    In the Qilu Notice Letter, Defendants Qilu Hainan Ltd. and Qilu Inc. acknowledged that the Reference Listed Drug for Qilu's ANDA is EXPAREL.

138.    In the Qilu Notice Letter, Defendants Qilu Hainan Ltd. and Qilu Inc. also notified Pacira that, as part of their ANDA, Qilu Hainan Ltd. and Qilu Inc. had filed a Paragraph IV Certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), with respect to the Patents-in-Suit.

139.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted their ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the each of the Patents-in-Suit is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product.

140.    In the Qilu Notice Letter, Defendants Qilu Hainan Ltd. and Qilu Inc. stated that Qilu's ANDA Product contains bupivacaine as an active ingredient.

141.    Included in the Qilu Notice Letter is an Offer of Confidential Access to ANDA No. 220830.  The terms of the proposed Offer would not allow Pacira to conduct a complete and full investigation of the information contained in the ANDA and of the representations about Qilu's ANDA Product that appear in the Qilu Notice Letter.  For example, the Offer allowed only two individual outside attorneys to access the ANDA, and would not allow in-house counsel or an in-house scientist for Pacira to review the ANDA.  It further permits Defendants Qilu Hainan Ltd. and Qilu Inc. to "redact[] to remove information" from Qilu's ANDA that they unilaterally determine to be "of no relevance" rather the producing the entire ANDA.  Thus, Pacira could not agree to the terms of the original Offer of Confidential Access.

142.    On November 13, 2025, counsel for Pacira sent a letter to counsel for Defendants Qilu Hainan Ltd. and Qilu Inc. in an attempt to negotiate the terms of Pacira's access to ANDA No. 220830.  Counsel for Defendants Qilu Hainan Ltd. and Qilu Inc. responded by declining Pacira's proposals.  The parties exchanged several additional letters, but were not able to reach an agreement regarding access to ANDA No. 220830 prior to the expiry of the time period set forth in 21 U.S.C. § 355(j)(5)(B)(iii).  Pacira thus makes these allegations based on information and belief, the laws and regulations regarding generic drugs, and the Qilu Notice Letter.

143.    Because Qilu's ANDA Product has not yet been approved by FDA and is not yet commercially available, Pacira is not aware of any other means for obtaining information about Qilu's ANDA Product other than pursuant to an Offer of Confidential Access from Defendants Qilu Hainan Ltd. and Qilu Inc.  In the absence of additional information, Pacira resorts to the judicial process and the aid of discovery to obtain, under appropriate judicial safeguards, such information as is required to confirm its allegations of infringement and present to the Court evidence that Qilu's ANDA Product infringes one or more claims of the Patents-in-Suit.

144.    On information and belief, Qilu Inc. is Qilu Hainan Ltd.'s United States agent.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., through their own actions and through the actions of their agents, affiliates, and subsidiaries, prepared and submitted Qilu's ANDA to the FDA, and intend to further prosecute Qilu's ANDA.

145.    On information and belief, if the FDA approves Qilu's ANDA, Defendants Qilu Hainan Ltd. and/or Qilu Inc. will manufacture, distribute, promote, market, offer for sale, or sell Qilu's ANDA Product within the United States, or will import Qilu's ANDA Product into the United States.  On information and belief, if the FDA approves Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc., through their own actions and through the actions of their agents, affiliates, and subsidiaries, will actively induce or contribute to the manufacture, use, offer for sale, sale, or importation of Qilu's ANDA Product in or into the United States.

146.    Pacira brings this action within forty-five days of receipt of the Qilu Notice Letter. Accordingly, Pacira is entitled to a stay of FDA approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

## COUNT I: INFRINGEMENT OF THE '495 PATENT BY WGI AND APOTEX

147.    Pacira incorporates each of the preceding paragraphs 1–146 as if fully set forth herein.

148.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '495 Patent.

149.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '495 Patent.

150.    Defendants WGI and Apotex's submission of WGI's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use,

offer for sale, sale, and/or importation of WGI's ANDA Product in or into the United States before the expiration of the '495 Patent is an act of infringement of the '495 Patent under 35 U.S.C. § 271(e)(2)(A).

151.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '495 Patent under 35 U.S.C. § 271(a)-(c).

152.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

153.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States would infringe one or more claims of the '495 Patent.

154.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '495 Patent.

155.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product,

which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '495 Patent. Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '495 Patent. On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '495 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

156.    On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '495 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants WGI and Apotex's activities will be done with knowledge of the '495 Patent and specific intent to infringe that patent.

157.    On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '495 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '495 Patent immediately and imminently upon approval of WGI's ANDA.

158.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '495 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '495 Patent.

159.    The foregoing actions by Defendants WGI and Apotex constitute and/or will constitute direct infringement of the '495 Patent; active inducement of infringement by others of the '495 Patent; and contribution to the infringement by others of the '495 Patent.

160.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries, filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '495 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.

161.    On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '495 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '495 Patent; active inducement of infringement by others of the '495 Patent; and/or contribution to the infringement by others of the '495 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '495 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

162.    Pacira will be substantially and irreparably damaged by infringement of the '495 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '495 Patent, actively inducing infringement of the '495 Patent, and contributing to the infringement of the '495 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT II: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '495 PATENT BY WGI AND APOTEX

163.    Pacira incorporates each of the preceding paragraphs 1–162 as if fully set forth herein.

164.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

165.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

166.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '495 Patent.

167.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '495 Patent.

168.    The Defendants WGI and Apotex have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import WGI's ANDA Product before the expiration date of the '495 Patent, including the filing of ANDA No. 220735.

169.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '495 patent under 35 U.S.C. § 271(a)-(c).

170.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

171.    The commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States will infringe one or more claims of the '495 Patent.

172.   On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '495 Patent.

173.   On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '495 Patent.  Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '495 Patent.  On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '495 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

174.   On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '495 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants WGI and Apotex's activities will be done with knowledge of the '495 Patent and specific intent to infringe that patent.

175.   On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '495 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On

information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '495 Patent immediately and imminently upon approval of WGI's ANDA.

176.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '495 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '495 Patent.

177.    The foregoing actions by Defendants WGI and Apotex will constitute direct infringement of the '495 Patent; active inducement of infringement by others of the '495 Patent; and contribution to the infringement by others of the '495 Patent.

178.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '495 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.  On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '495 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '495 Patent; active inducement of infringement by others of the '495 Patent; and/or contribution to the infringement by others of the '495 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '495 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

179.    Pacira will be substantially and irreparably damaged by infringement of the '495 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '495 Patent, actively inducing infringement of the '495 Patent, and contributing to the infringement of the '495

Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

180.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product will constitute infringement of one or more claims of the '495 Patent.

### COUNT III: INFRINGEMENT OF THE '574 PATENT BY WGI AND APOTEX

181.    Pacira incorporates each of the preceding paragraphs 1–180 as if fully set forth herein.

182.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '574 Patent.

183.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '574 Patent.

184.    Defendants WGI and Apotex's submission of WGI's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product in or into the United States before the expiration of the '574 Patent is an act of infringement of the '574 Patent under 35 U.S.C. § 271(e)(2)(A).

185.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '574 Patent under 35 U.S.C. § 271(a)-(c).

186.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

187.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States would infringe one or more claims of the '574 Patent.

188.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '574 Patent.

189.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '574 Patent.  Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '574 Patent.  On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '574 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

190.    On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '574 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants WGI and Apotex's activities will be done with knowledge of the '574 Patent and specific intent to infringe that patent.

191.    On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '574 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '574 Patent immediately and imminently upon approval of WGI's ANDA.

192.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '574 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '574 Patent.

193.    The foregoing actions by Defendants WGI and Apotex constitute and/or will constitute direct infringement of the '574 Patent; active inducement of infringement by others of the '574 Patent; and contribution to the infringement by others of the '574 Patent.

194.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries, filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '574 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.

195.    On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '574 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '574 Patent; active inducement of infringement by others of the '574 Patent; and/or contribution to the infringement by others of the '574 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '574 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

196.    Pacira will be substantially and irreparably damaged by infringement of the '574 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '574 Patent, actively inducing infringement of the '574 Patent, and contributing to the infringement of the '574 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT IV: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '574 PATENT BY WGI AND APOTEX

197.    Pacira incorporates each of the preceding paragraphs 1–196 as if fully set forth herein.

198.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

199.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

200.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '574 Patent.

201.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '574 Patent.

202.    The Defendants WGI and Apotex have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import WGI's ANDA Product before the expiration date of the '574 Patent, including the filing of ANDA No. 220735.

203.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '574 patent under 35 U.S.C. § 271(a)-(c).

204.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

205.    The commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States will infringe one or more claims of the '574 Patent.

206.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '574 Patent.

207.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and

subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '574 Patent.  Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '574 Patent.  On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '574 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

208.    On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '574 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants WGI and Apotex's activities will be done with knowledge of the '574 Patent and specific intent to infringe that patent.

209.    On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '574 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '574 Patent immediately and imminently upon approval of WGI's ANDA.

210.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '574 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer

for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '574 Patent.

211.    The foregoing actions by Defendants WGI and Apotex will constitute direct infringement of the '574 Patent; active inducement of infringement by others of the '574 Patent; and contribution to the infringement by others of the '574 Patent.

212.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '574 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.  On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '574 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '574 Patent; active inducement of infringement by others of the '574 Patent; and/or contribution to the infringement by others of the '574 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '574 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

213.    Pacira will be substantially and irreparably damaged by infringement of the '574 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '574 Patent, actively inducing infringement of the '574 Patent, and contributing to the infringement of the '574 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

214.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product will constitute infringement of one or more claims of the '574 Patent.

## COUNT V: INFRINGEMENT OF THE '890 PATENT BY WGI AND APOTEX

215.    Pacira incorporates each of the preceding paragraphs 1–214 as if fully set forth herein.

216.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '890 Patent.

217.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '890 Patent.

218.    Defendants WGI and Apotex's submission of WGI's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product in or into the United States before the expiration of the '890 Patent is an act of infringement of the '890 Patent under 35 U.S.C. § 271(e)(2)(A).

219.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '890 Patent under 35 U.S.C. § 271(a)-(c).

220.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of

WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

221.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States would infringe one or more claims of the '890 Patent.

222.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '890 Patent.

223.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '890 Patent.  Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '890 Patent.  On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '890 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

224.    On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '890 Patent when WGI's ANDA is approved, and plan and intend

to, and will, do so immediately and imminently upon approval.  Defendants WGI and Apotex's activities will be done with knowledge of the '890 Patent and specific intent to infringe that patent.

225.    On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '890 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '890 Patent immediately and imminently upon approval of WGI's ANDA.

226.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '890 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '890 Patent.

227.    The foregoing actions by Defendants WGI and Apotex constitute and/or will constitute direct infringement of the '890 Patent; active inducement of infringement by others of the '890 Patent; and contribution to the infringement by others of the '890 Patent.

228.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries, filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '890 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.

229.    On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '890 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '890 Patent; active inducement of infringement by others of the

49

'890 Patent; and/or contribution to the infringement by others of the '890 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '890 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

230.    Pacira will be substantially and irreparably damaged by infringement of the '890 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '890 Patent, actively inducing infringement of the '890 Patent, and contributing to the infringement of the '890 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT VI: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '890 PATENT BY WGI AND APOTEX

231.    Pacira incorporates each of the preceding paragraphs 1–230 as if fully set forth herein.

232.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

233.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

234.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '890 Patent.

235.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '890 Patent.

236. The Defendants WGI and Apotex have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import WGI's ANDA Product before the expiration date of the '890 Patent, including the filing of ANDA No. 220735.

237. If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '890 patent under 35 U.S.C. § 271(a)-(c).

238. On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

239. The commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States will infringe one or more claims of the '890 Patent.

240. On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '890 Patent.

241. On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users. On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL,

(Exhibit A), and which, if followed, will infringe the '890 Patent. Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '890 Patent. On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '890 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

242. On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '890 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants WGI and Apotex's activities will be done with knowledge of the '890 Patent and specific intent to infringe that patent.

243. On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '890 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '890 Patent immediately and imminently upon approval of WGI's ANDA.

244. Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '890 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '890 Patent.

245. The foregoing actions by Defendants WGI and Apotex will constitute direct infringement of the '890 Patent; active inducement of infringement by others of the '890 Patent; and contribution to the infringement by others of the '890 Patent.

246.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '890 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.  On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '890 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '890 Patent; active inducement of infringement by others of the '890 Patent; and/or contribution to the infringement by others of the '890 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '890 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

247.    Pacira will be substantially and irreparably damaged by infringement of the '890 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '890 Patent, actively inducing infringement of the '890 Patent, and contributing to the infringement of the '890 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

248.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product will constitute infringement of one or more claims of the '890 Patent.

## COUNT VII: INFRINGEMENT OF THE '024 PATENT BY WGI AND APOTEX

249.     Pacira incorporates each of the preceding paragraphs 1–248 as if fully set forth herein.

250.     On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '024 Patent.

251.     WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '024 Patent.

252.     Defendants WGI and Apotex's submission of WGI's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product in or into the United States before the expiration of the '024 Patent is an act of infringement of the '024 Patent under 35 U.S.C. § 271(e)(2)(A).

253.     If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '024 Patent under 35 U.S.C. § 271(a)-(c).

254.     On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

255.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States would infringe one or more claims of the '024 Patent.

256.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '024 Patent.

257.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '024 Patent.  Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '024 Patent.  On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '024 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

258.    On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '024 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants WGI and Apotex's activities will be done with knowledge of the '024 Patent and specific intent to infringe that patent.

259.    On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '024 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '024 Patent immediately and imminently upon approval of WGI's ANDA.

260.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '024 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '024 Patent.

261.    The foregoing actions by Defendants WGI and Apotex constitute and/or will constitute direct infringement of the '024 Patent; active inducement of infringement by others of the '024 Patent; and contribution to the infringement by others of the '024 Patent.

262.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries, filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '024 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.

263.    On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '024 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '024 Patent; active inducement of infringement by others of the '024 Patent; and/or contribution to the infringement by others of the '024 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '024 Patent

was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

264.    Pacira will be substantially and irreparably damaged by infringement of the '024 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '024 Patent, actively inducing infringement of the '024 Patent, and contributing to the infringement of the '024 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT VIII: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '024 PATENT BY WGI AND APOTEX

265.    Pacira incorporates each of the preceding paragraphs 1–264 as if fully set forth herein.

266.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

267.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

268.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '024 Patent.

269.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '024 Patent.

270.    The Defendants WGI and Apotex have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import WGI's ANDA Product before the expiration date of the '024 Patent, including the filing of ANDA No. 220735.

271.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '024 patent under 35 U.S.C. § 271(a)-(c).

272.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

273.    The commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States will infringe one or more claims of the '024 Patent.

274.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '024 Patent.

275.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL,

(Exhibit A), and which, if followed, will infringe the '024 Patent. Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '024 Patent. On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '024 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

276. On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '024 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants WGI and Apotex's activities will be done with knowledge of the '024 Patent and specific intent to infringe that patent.

277. On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '024 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '024 Patent immediately and imminently upon approval of WGI's ANDA.

278. Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '024 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '024 Patent.

279. The foregoing actions by Defendants WGI and Apotex will constitute direct infringement of the '024 Patent; active inducement of infringement by others of the '024 Patent; and contribution to the infringement by others of the '024 Patent.

280.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '024 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.  On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '024 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '024 Patent; active inducement of infringement by others of the '024 Patent; and/or contribution to the infringement by others of the '024 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '024 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

281.    Pacira will be substantially and irreparably damaged by infringement of the '024 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '024 Patent, actively inducing infringement of the '024 Patent, and contributing to the infringement of the '024 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

282.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product will constitute infringement of one or more claims of the '024 Patent.

## COUNT IX: INFRINGEMENT OF THE '047 PATENT BY WGI AND APOTEX

283.    Pacira incorporates each of the preceding paragraphs 1–282 as if fully set forth herein.

284.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '047 Patent.

285.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '047 Patent.

286.    Defendants WGI and Apotex's submission of WGI's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product in or into the United States before the expiration of the '047 Patent is an act of infringement of the '047 Patent under 35 U.S.C. § 271(e)(2)(A).

287.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '047 Patent under 35 U.S.C. § 271(a)-(c).

288.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

289.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States would infringe one or more claims of the '047 Patent.

290.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '047 Patent.

291.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '047 Patent.  Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '047 Patent.  On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '047 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

292.    On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '047 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants WGI and Apotex's activities will be done with knowledge of the '047 Patent and specific intent to infringe that patent.

293.    On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '047 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On

information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '047 Patent immediately and imminently upon approval of WGI's ANDA.

294.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '047 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '047 Patent.

295.    The foregoing actions by Defendants WGI and Apotex constitute and/or will constitute direct infringement of the '047 Patent; active inducement of infringement by others of the '047 Patent; and contribution to the infringement by others of the '047 Patent.

296.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries, filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '047 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.

297.    On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '047 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '047 Patent; active inducement of infringement by others of the '047 Patent; and/or contribution to the infringement by others of the '047 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '047 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

298.    Pacira will be substantially and irreparably damaged by infringement of the '047 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '047 Patent,

actively inducing infringement of the '047 Patent, and contributing to the infringement of the '047 Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## <u>COUNT X: DECLARATORY JUDGMENT OF INFRINGEMENT<br>OF THE '047 PATENT BY WGI AND APOTEX</u>

299.    Pacira incorporates each of the preceding paragraphs 1–298 as if fully set forth herein.

300.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

301.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

302.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '047 Patent.

303.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '047 Patent.

304.    The Defendants WGI and Apotex have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import WGI's ANDA Product before the expiration date of the '047 Patent, including the filing of ANDA No. 220735.

305.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States

will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '047 patent under 35 U.S.C. § 271(a)-(c).

306.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

307.    The commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States will infringe one or more claims of the '047 Patent.

308.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '047 Patent.

309.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '047 Patent.  Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '047 Patent.  On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '047 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

310.    On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '047 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants WGI and Apotex's activities will be done with knowledge of the '047 Patent and specific intent to infringe that patent.

311.    On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '047 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '047 Patent immediately and imminently upon approval of WGI's ANDA.

312.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '047 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '047 Patent.

313.    The foregoing actions by Defendants WGI and Apotex will constitute direct infringement of the '047 Patent; active inducement of infringement by others of the '047 Patent; and contribution to the infringement by others of the '047 Patent.

314.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '047 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.  On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '047 Patent and without a reasonable basis for believing that they would not

be liable for direct infringement of the '047 Patent; active inducement of infringement by others of the '047 Patent; and/or contribution to the infringement by others of the '047 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '047 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

315.    Pacira will be substantially and irreparably damaged by infringement of the '047 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '047 Patent, actively inducing infringement of the '047 Patent, and contributing to the infringement of the '047 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

316.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product will constitute infringement of one or more claims of the '047 Patent.

### COUNT XI: INFRINGEMENT OF THE '483 PATENT BY WGI AND APOTEX

317.    Pacira incorporates each of the preceding paragraphs 1–316 as if fully set forth herein.

318.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '483 Patent.

319.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '483 Patent.

320.    Defendants WGI and Apotex's submission of WGI's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product in or into the United States before the expiration of the '483 Patent is an act of infringement of the '047 Patent under 35 U.S.C. § 271(e)(2)(A).

321.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '483 Patent under 35 U.S.C. § 271(a)-(c).

322.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

323.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States would infringe one or more claims of the '483 Patent.

324.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '483 Patent.

325.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI

and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '483 Patent. Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '483 Patent. On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '483 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

326.    On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '483 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants WGI and Apotex's activities will be done with knowledge of the '483 Patent and specific intent to infringe that patent.

327.    On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '483 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '483 Patent immediately and imminently upon approval of WGI's ANDA.

328.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '483 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '483 Patent.

329.   The foregoing actions by Defendants WGI and Apotex constitute and/or will constitute direct infringement of the '483 Patent; active inducement of infringement by others of the '483 Patent; and contribution to the infringement by others of the '483 Patent.

330.   On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries, filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '483 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.

331.   On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '483 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '483 Patent; active inducement of infringement by others of the '483 Patent; and/or contribution to the infringement by others of the '483 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '483 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

332.   Pacira will be substantially and irreparably damaged by infringement of the '483 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '483 Patent, actively inducing infringement of the '483 Patent, and contributing to the infringement of the '483 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XII: DECLARATORY JUDGMENT OF INFRINGEMENT
## OF THE '483 PATENT BY WGI AND APOTEX

333.    Pacira incorporates each of the preceding paragraphs 1–332 as if fully set forth herein.

334.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

335.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

336.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '483 Patent.

337.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '483 Patent.

338.    The Defendants WGI and Apotex have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import WGI's ANDA Product before the expiration date of the '483 Patent, including the filing of ANDA No. 220735.

339.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '483 patent under 35 U.S.C. § 271(a)-(c).

340.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of

WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

341.    The commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States will infringe one or more claims of the '483 Patent.

342.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '483 Patent.

343.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '483 Patent.  Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '483 Patent.  On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '483 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

344.    On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '483 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants WGI and Apotex's activities will be done with knowledge of the '483 Patent and specific intent to infringe that patent.

345.     On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '483 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '483 Patent immediately and imminently upon approval of WGI's ANDA.

346.     Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '483 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '483 Patent.

347.     The foregoing actions by Defendants WGI and Apotex will constitute direct infringement of the '483 Patent; active inducement of infringement by others of the '483 Patent; and contribution to the infringement by others of the '483 Patent.

348.     On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '483 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.  On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '483 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '483 Patent; active inducement of infringement by others of the '483 Patent; and/or contribution to the infringement by others of the '483 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '483 Patent

was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

349.    Pacira will be substantially and irreparably damaged by infringement of the '483 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '483 Patent, actively inducing infringement of the '483 Patent, and contributing to the infringement of the '483 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

350.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product will constitute infringement of one or more claims of the '483 Patent.

## COUNT XIII: INFRINGEMENT OF THE '940 PATENT BY WGI AND APOTEX

351.    Pacira incorporates each of the preceding paragraphs 1–350 as if fully set forth herein.

352.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '940 Patent.

353.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '940 Patent.

354.    Defendants WGI and Apotex's submission of WGI's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product in or into the United States before

the expiration of the '940 Patent is an act of infringement of the '940 Patent under 35 U.S.C. § 271(e)(2)(A).

355.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '940 Patent under 35 U.S.C. § 271(a)-(c).

356.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

357.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States would infringe one or more claims of the '940 Patent.

358.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '940 Patent.

359.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL

(Exhibit A) and which, if followed, will infringe claims of the '940 Patent. Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '940 Patent. On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '940 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

360.    On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '940 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants WGI and Apotex's activities will be done with knowledge of the '940 Patent and specific intent to infringe that patent.

361.    On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '940 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '940 Patent immediately and imminently upon approval of WGI's ANDA.

362.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '940 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '940 Patent.

363.    The foregoing actions by Defendants WGI and Apotex constitute and/or will constitute direct infringement of the '940 Patent; active inducement of infringement by others of the '940 Patent; and contribution to the infringement by others of the '940 Patent.

364.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries, filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '940 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.

365.    On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '940 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '940 Patent; active inducement of infringement by others of the '940 Patent; and/or contribution to the infringement by others of the '940 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '940 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

366.    Pacira will be substantially and irreparably damaged by infringement of the '940 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '940 Patent, actively inducing infringement of the '940 Patent, and contributing to the infringement of the '940 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XIV: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '940 PATENT BY WGI AND APOTEX

367.    Pacira incorporates each of the preceding paragraphs 1–366 as if fully set forth herein.

368.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

369.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

370.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '940 Patent.

371.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '940 Patent.

372.    The Defendants WGI and Apotex have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import WGI's ANDA Product before the expiration date of the '940 Patent, including the filing of ANDA No. 220735.

373.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '940 patent under 35 U.S.C. § 271(a)-(c).

374.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

375.    The commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States will infringe one or more claims of the '940 Patent.

376. On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '940 Patent.

377. On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users. On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '940 Patent. Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '940 Patent. On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '940 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

378. On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '940 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants WGI and Apotex's activities will be done with knowledge of the '940 Patent and specific intent to infringe that patent.

379. On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '940 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On

information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '940 Patent immediately and imminently upon approval of WGI's ANDA.

380.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '940 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '940 Patent.

381.    The foregoing actions by Defendants WGI and Apotex will constitute direct infringement of the '940 Patent; active inducement of infringement by others of the '940 Patent; and contribution to the infringement by others of the '940 Patent.

382.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '940 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.  On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '940 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '940 Patent; active inducement of infringement by others of the '940 Patent; and/or contribution to the infringement by others of the '940 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '940 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

383.    Pacira will be substantially and irreparably damaged by infringement of the '940 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '940 Patent, actively inducing infringement of the '940 Patent, and contributing to the infringement of the '940

Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

384.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product will constitute infringement of one or more claims of the '940 Patent.

## COUNT XV: INFRINGEMENT OF THE '468 PATENT BY WGI AND APOTEX

385.    Pacira incorporates each of the preceding paragraphs 1–384 as if fully set forth herein.

386.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '468 Patent.

387.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '468 Patent.

388.    Defendants WGI and Apotex's submission of WGI's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product in or into the United States before the expiration of the '468 Patent is an act of infringement of the '468 Patent under 35 U.S.C. § 271(e)(2)(A).

389.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '468 Patent under 35 U.S.C. § 271(a)-(c).

390.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

391.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States would infringe one or more claims of the '468 Patent.

392.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '468 Patent.

393.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '468 Patent.  Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '468 Patent.  On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '468 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

394.    On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '468 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants WGI and Apotex's activities will be done with knowledge of the '468 Patent and specific intent to infringe that patent.

395.    On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '468 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '468 Patent immediately and imminently upon approval of WGI's ANDA.

396.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '468 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '468 Patent.

397.    The foregoing actions by Defendants WGI and Apotex constitute and/or will constitute direct infringement of the '468 Patent; active inducement of infringement by others of the '468 Patent; and contribution to the infringement by others of the '468 Patent.

398.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries, filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '468 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.

399.     On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '468 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '468 Patent; active inducement of infringement by others of the '468 Patent; and/or contribution to the infringement by others of the '468 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '468 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

400.     Pacira will be substantially and irreparably damaged by infringement of the '468 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '468 Patent, actively inducing infringement of the '468 Patent, and contributing to the infringement of the '468 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XVI: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '468 PATENT BY WGI AND APOTEX

401.     Pacira incorporates each of the preceding paragraphs 1–400 as if fully set forth herein.

402.     These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

403.     There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

404.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '468 Patent.

405.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '468 Patent.

406.    The Defendants WGI and Apotex have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import WGI's ANDA Product before the expiration date of the '468 Patent, including the filing of ANDA No. 220735.

407.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '468 patent under 35 U.S.C. § 271(a)-(c).

408.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

409.    The commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States will infringe one or more claims of the '468 Patent.

410.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '468 Patent.

411.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and

subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users. On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '468 Patent. Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '468 Patent. On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '468 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

412. On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '468 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants WGI and Apotex's activities will be done with knowledge of the '468 Patent and specific intent to infringe that patent.

413. On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '468 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '468 Patent immediately and imminently upon approval of WGI's ANDA.

414. Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '468 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer

for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '468 Patent.

415.    The foregoing actions by Defendants WGI and Apotex will constitute direct infringement of the '468 Patent; active inducement of infringement by others of the '468 Patent; and contribution to the infringement by others of the '468 Patent.

416.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '468 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.  On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '468 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '468 Patent; active inducement of infringement by others of the '468 Patent; and/or contribution to the infringement by others of the '468 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '468 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

417.    Pacira will be substantially and irreparably damaged by infringement of the '468 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '468 Patent, actively inducing infringement of the '468 Patent, and contributing to the infringement of the '468 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

418.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product will constitute infringement of one or more claims of the '468 Patent.

### COUNT XVII: INFRINGEMENT OF THE '142 PATENT BY WGI AND APOTEX

419.    Pacira incorporates each of the preceding paragraphs 1–418 as if fully set forth herein

420.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '142 Patent.

421.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '142 Patent.

422.    Defendants WGI and Apotex's submission of WGI's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product in or into the United States before the expiration of the '142 Patent is an act of infringement of the '142 Patent under 35 U.S.C. § 271(e)(2)(A).

423.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '142 Patent under 35 U.S.C. § 271(a)-(c).

424.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

425.     On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States would infringe one or more claims of the '142 Patent.

426.     On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '142 Patent.

427.     On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '142 Patent.  Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '142 Patent.  On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '142 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

428.     On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '142 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants WGI and Apotex's activities will be done with knowledge of the '142 Patent and specific intent to infringe that patent.

429.    On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '142 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '142 Patent immediately and imminently upon approval of WGI's ANDA.

430.    Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '142 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '142 Patent.

431.    The foregoing actions by Defendants WGI and Apotex constitute and/or will constitute direct infringement of the '142 Patent; active inducement of infringement by others of the '142 Patent; and contribution to the infringement by others of the '142 Patent.

432.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries, filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '142 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.

433.    On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '142 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '142 Patent; active inducement of infringement by others of the '142 Patent; and/or contribution to the infringement by others of the '142 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '142 Patent

90

was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

434.    Pacira will be substantially and irreparably damaged by infringement of the '142 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '142 Patent, actively inducing infringement of the '142 Patent, and contributing to the infringement of the '142 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XVIII: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '142 PATENT BY WGI AND APOTEX

435.    Pacira incorporates each of the preceding paragraphs 1–434 as if fully set forth herein.

436.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

437.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

438.    On information and belief, Defendants WGI and Apotex submitted or caused submission of WGI's ANDA to obtain FDA approval for WGI's ANDA Product in the United States before expiration of the '142 Patent.

439.    WGI's ANDA Product, and the use of WGI's ANDA Product, are covered by one or more claims of the '142 Patent.

440.    The Defendants WGI and Apotex have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import WGI's ANDA Product before the expiration date of the '142 Patent, including the filing of ANDA No. 220735.

441.    If approved by the FDA, Defendants WGI and Apotex's commercial manufacture, use, importation, sale, and/or offer for sale of WGI's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '142 patent under 35 U.S.C. § 271(a)-(c).

442.    On information and belief, Defendants WGI and Apotex will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of WGI's ANDA Product in or into the United States immediately and imminently upon approval of WGI's ANDA.

443.    The commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in or into the United States will infringe one or more claims of the '142 Patent.

444.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of WGI's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '142 Patent.

445.    On information and belief, upon FDA approval of WGI's ANDA, Defendants WGI and Apotex will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute WGI's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants WGI and Apotex will knowingly and intentionally accompany WGI's ANDA Product with a product label or product insert that will include instructions for using or administering WGI's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL,

(Exhibit A), and which, if followed, will infringe the '142 Patent. Accordingly, Defendants WGI and Apotex will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of WGI's ANDA Product to directly infringe the '142 Patent. On information and belief, Defendants WGI and Apotex will encourage acts of direct infringement with knowledge of the '142 Patent and knowledge that Defendants WGI and Apotex are encouraging infringement.

446. On information and belief, Defendants WGI and Apotex plan and intend to, and will, actively induce infringement of the '142 Patent when WGI's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants WGI and Apotex's activities will be done with knowledge of the '142 Patent and specific intent to infringe that patent.

447. On information and belief, Defendants WGI and Apotex know that WGI's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '142 Patent, that WGI's ANDA Product is not a staple article or commodity of commerce, and that WGI's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants WGI and Apotex plan and intend to, and will, contribute to infringement of the '142 Patent immediately and imminently upon approval of WGI's ANDA.

448. Notwithstanding Defendants WGI and Apotex's knowledge of the claims of the '142 Patent, Defendants WGI and Apotex have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import WGI's ANDA Product with its product labeling in or into the United States following FDA approval of WGI's ANDA prior to the expiration of the '142 Patent.

449. The foregoing actions by Defendants WGI and Apotex will constitute direct infringement of the '142 Patent; active inducement of infringement by others of the '142 Patent; and contribution to the infringement by others of the '142 Patent.

450.    On information and belief, Defendants WGI and Apotex, in concert with their agents, affiliates, and subsidiaries filed WGI's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '142 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of WGI's ANDA Product.  On information and belief, Defendants WGI and Apotex have acted with full knowledge of the '142 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '142 Patent; active inducement of infringement by others of the '142 Patent; and/or contribution to the infringement by others of the '142 Patent.  On information and belief, the direct and indirect infringement by Defendants WGI and Apotex of the '142 Patent was and is willful. Defendants WGI and Apotex's conduct renders this case "exceptional" under 35 U.S.C. § 285.

451.    Pacira will be substantially and irreparably damaged by infringement of the '142 Patent.  Unless Defendants WGI and Apotex are enjoined from directly infringing the '142 Patent, actively inducing infringement of the '142 Patent, and contributing to the infringement of the '142 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants WGI and Apotex, a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

452.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product will constitute infringement of one or more claims of the '142 Patent.

## COUNT XIX: INFRINGEMENT OF THE '495 PATENT BY QILU HAINAN LTD. AND QILU INC.

453. Pacira incorporates each of the preceding paragraphs 1–452 as if fully set forth herein.

454. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '495 Patent.

455. Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '495 Patent.

456. Defendants Qilu Hainan Ltd. and Qilu Inc.'s submission of Qilu's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product in or into the United States before the expiration of the '495 Patent is an act of infringement of the '495 Patent under 35 U.S.C. § 271(e)(2)(A).

457. If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '495 Patent under 35 U.S.C. § 271(a)-(c).

458. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

459.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States would infringe one or more claims of the '495 Patent.

460.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '495 Patent.

461.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '495 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '495 Patent.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '495 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

462.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '495 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants Qilu

Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '495 Patent and specific intent to infringe that patent.

463.   On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '495 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '495 Patent immediately and imminently upon approval of Qilu's ANDA.

464.   Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '495 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '495 Patent.

465.   The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. constitute and/or will constitute direct infringement of the '495 Patent; active inducement of infringement by others of the '495 Patent; and contribution to the infringement by others of the '495 Patent.

466.   On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries, filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '495 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.

467.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '495 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '495 Patent; active inducement of infringement by others of the '495 Patent; and/or contribution to the infringement by others of the '495 Patent.    On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '495 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

468.    Pacira will be substantially and irreparably damaged by infringement of the '495 Patent.  Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '495 Patent, actively inducing infringement of the '495 Patent, and contributing to the infringement of the '495 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

**COUNT XX: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '495 PATENT BY QILU HAINAN LTD. AND QILU INC.**

469.    Pacira incorporates each of the preceding paragraphs 1–468 as if fully set forth herein.

470.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

471.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

472.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '495 Patent.

473.    Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '495 Patent.

474.    The Defendants Qilu Hainan Ltd. and Qilu Inc. have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import Qilu's ANDA Product before the expiration date of the '495 Patent, including the filing of ANDA No. 220830.

475.    If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '495 patent under 35 U.S.C. § 271(a)-(c).

476.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

477.    The commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States will infringe one or more claims of the '495 Patent.

478.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '495 Patent.

479.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '495 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '495 Patent.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '495 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

480.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '495 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '495 Patent and specific intent to infringe that patent.

481.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '495 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and

intend to, and will, contribute to infringement of the '495 Patent immediately and imminently upon approval of Qilu's ANDA.

482.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '495 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '495 Patent.

483.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. will constitute direct infringement of the '495 Patent; active inducement of infringement by others of the '495 Patent; and contribution to the infringement by others of the '495 Patent.

484.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '495 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '495 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '495 Patent; active inducement of infringement by others of the '495 Patent; and/or contribution to the infringement by others of the '495 Patent.  On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '495 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

485.    Pacira will be substantially and irreparably damaged by infringement of the '495 Patent.  Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the

'495 Patent, actively inducing infringement of the '495 Patent, and contributing to the infringement of the '495 Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

486. Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product will constitute infringement of one or more claims of the '495 Patent.

## COUNT XXI: INFRINGEMENT OF THE '574 PATENT BY QILU HAINAN LTD. AND QILU INC.

487. Pacira incorporates each of the preceding paragraphs 1–486 as if fully set forth herein.

488. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '574 Patent.

489. Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '574 Patent.

490. Defendants Qilu Hainan Ltd. and Qilu Inc.'s submission of Qilu's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product in or into the United States before the expiration of the '574 Patent is an act of infringement of the '574 Patent under 35 U.S.C. § 271(e)(2)(A).

491.    If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '574 Patent under 35 U.S.C. § 271(a)-(c).

492.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

493.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States would infringe one or more claims of the '574 Patent.

494.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '574 Patent.

495.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '574 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers,

pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '574 Patent. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '574 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

496. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '574 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '574 Patent and specific intent to infringe that patent.

497. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '574 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '574 Patent immediately and imminently upon approval of Qilu's ANDA.

498. Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '574 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '574 Patent.

499.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. constitute and/or will constitute direct infringement of the '574 Patent; active inducement of infringement by others of the '574 Patent; and contribution to the infringement by others of the '574 Patent.

500.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries, filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '574 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.

501.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '574 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '574 Patent; active inducement of infringement by others of the '574 Patent; and/or contribution to the infringement by others of the '574 Patent.   On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '574 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

502.    Pacira will be substantially and irreparably damaged by infringement of the '574 Patent.  Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '574 Patent, actively inducing infringement of the '574 Patent, and contributing to the infringement of the '574 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XXII: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '574 PATENT BY QILU HAINAN LTD. AND QILU INC.

503.    Pacira incorporates each of the preceding paragraphs 1–502 as if fully set forth herein.

504.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

505.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

506.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '574 Patent.

507.    Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '574 Patent.

508.    The Defendants Qilu Hainan Ltd. and Qilu Inc. have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import Qilu's ANDA Product before the expiration date of the '574 Patent, including the filing of ANDA No. 220830.

509.    If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '574 patent under 35 U.S.C. § 271(a)-(c).

510.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of

Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

511.    The commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States will infringe one or more claims of the '574 Patent.

512.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '574 Patent.

513.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '574 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '574 Patent.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '574 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

514.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '574 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants Qilu

Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '574 Patent and specific intent to infringe that patent.

515.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '574 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '574 Patent immediately and imminently upon approval of Qilu's ANDA.

516.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '574 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '574 Patent.

517.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. will constitute direct infringement of the '574 Patent; active inducement of infringement by others of the '574 Patent; and contribution to the infringement by others of the '574 Patent.

518.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '574 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '574 Patent and without a reasonable basis for

believing that they would not be liable for direct infringement of the '574 Patent; active inducement of infringement by others of the '574 Patent; and/or contribution to the infringement by others of the '574 Patent. On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '574 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

519. Pacira will be substantially and irreparably damaged by infringement of the '574 Patent. Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '574 Patent, actively inducing infringement of the '574 Patent, and contributing to the infringement of the '574 Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

520. Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product will constitute infringement of one or more claims of the '574 Patent.

## COUNT XXIII: INFRINGEMENT OF THE '890 PATENT BY QILU HAINAN LTD. AND QILU INC.

521. Pacira incorporates each of the preceding paragraphs 1–520 as if fully set forth herein.

522. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '890 Patent.

523. Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '890 Patent.

524. Defendants Qilu Hainan Ltd. and Qilu Inc.'s submission of Qilu's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product in or into the United States before the expiration of the '890 Patent is an act of infringement of the '890 Patent under 35 U.S.C. § 271(e)(2)(A).

525. If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '890 Patent under 35 U.S.C. § 271(a)-(c).

526. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

527. On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States would infringe one or more claims of the '890 Patent.

528. On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '890 Patent.

529. On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents,

affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '890 Patent. Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '890 Patent. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '890 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

530.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '890 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '890 Patent and specific intent to infringe that patent.

531.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '890 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '890 Patent immediately and imminently upon approval of Qilu's ANDA.

532.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '890 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '890 Patent.

533.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. constitute and/or will constitute direct infringement of the '890 Patent; active inducement of infringement by others of the '890 Patent; and contribution to the infringement by others of the '890 Patent.

534.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries, filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '890 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.

535.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '890 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '890 Patent; active inducement of infringement by others of the '890 Patent; and/or contribution to the infringement by others of the '890 Patent. On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '890 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

536.    Pacira will be substantially and irreparably damaged by infringement of the '890 Patent. Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '890 Patent, actively inducing infringement of the '890 Patent, and contributing to the infringement

of the '890 Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XXIV: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '890 PATENT BY QILU HAINAN LTD. AND QILU INC.

537. Pacira incorporates each of the preceding paragraphs 1–536 as if fully set forth herein.

538. These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

539. There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

540. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '890 Patent.

541. Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '890 Patent.

542. The Defendants Qilu Hainan Ltd. and Qilu Inc. have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import Qilu's ANDA Product before the expiration date of the '890 Patent, including the filing of ANDA No. 220830.

543. If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the

United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '890 patent under 35 U.S.C. § 271(a)-(c).

544.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

545.    The commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States will infringe one or more claims of the '890 Patent.

546.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '890 Patent.

547.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '890 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '890 Patent.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will

encourage acts of direct infringement with knowledge of the '890 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

548.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '890 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '890 Patent and specific intent to infringe that patent.

549.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '890 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '890 Patent immediately and imminently upon approval of Qilu's ANDA.

550.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '890 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '890 Patent.

551.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. will constitute direct infringement of the '890 Patent; active inducement of infringement by others of the '890 Patent; and contribution to the infringement by others of the '890 Patent.

552.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '890 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '890 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '890 Patent; active inducement of infringement by others of the '890 Patent; and/or contribution to the infringement by others of the '890 Patent.  On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '890 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

553.    Pacira will be substantially and irreparably damaged by infringement of the '890 Patent.  Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '890 Patent, actively inducing infringement of the '890 Patent, and contributing to the infringement of the '890 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

554.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product will constitute infringement of one or more claims of the '890 Patent.

## COUNT XXV: INFRINGEMENT OF THE '024 PATENT BY QILU HAINAN LTD. AND QILU INC.

555.    Pacira incorporates each of the preceding paragraphs 1–554 as if fully set forth herein.

556.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '024 Patent.

557.    Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '024 Patent.

558.    Defendants Qilu Hainan Ltd. and Qilu Inc.'s submission of Qilu's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product in or into the United States before the expiration of the '024 Patent is an act of infringement of the '024 Patent under 35 U.S.C. § 271(e)(2)(A).

559.    If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '024 Patent under 35 U.S.C. § 271(a)-(c).

560.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

561.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States would infringe one or more claims of the '024 Patent.

562.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '024 Patent.

563.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '024 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '024 Patent.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '024 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

564.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '024 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants Qilu

Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '024 Patent and specific intent to infringe that patent.

565.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '024 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '024 Patent immediately and imminently upon approval of Qilu's ANDA.

566.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '024 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '024 Patent.

567.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. constitute and/or will constitute direct infringement of the '024 Patent; active inducement of infringement by others of the '024 Patent; and contribution to the infringement by others of the '024 Patent.

568.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries, filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '024 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.

569. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '024 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '024 Patent; active inducement of infringement by others of the '024 Patent; and/or contribution to the infringement by others of the '024 Patent. On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '024 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

570. Pacira will be substantially and irreparably damaged by infringement of the '024 Patent. Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '024 Patent, actively inducing infringement of the '024 Patent, and contributing to the infringement of the '024 Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XXVI: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '024 PATENT BY QILU HAINAN LTD. AND QILU INC.

571. Pacira incorporates each of the preceding paragraphs 1–570 as if fully set forth herein.

572. These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

573. There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

574.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '024 Patent.

575.    Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '024 Patent.

576.    The Defendants Qilu Hainan Ltd. and Qilu Inc. have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import Qilu's ANDA Product before the expiration date of the '024 Patent, including the filing of ANDA No. 220830.

577.    If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '024 patent under 35 U.S.C. § 271(a)-(c).

578.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

579.    The commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States will infringe one or more claims of the '024 Patent.

580.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '024 Patent.

581.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '024 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '024 Patent.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '024 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

582.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '024 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '024 Patent and specific intent to infringe that patent.

583.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '024 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and

intend to, and will, contribute to infringement of the '024 Patent immediately and imminently upon approval of Qilu's ANDA.

584.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '024 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '024 Patent.

585.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. will constitute direct infringement of the '024 Patent; active inducement of infringement by others of the '024 Patent; and contribution to the infringement by others of the '024 Patent.

586.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '024 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '024 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '024 Patent; active inducement of infringement by others of the '024 Patent; and/or contribution to the infringement by others of the '024 Patent.  On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '024 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

587.    Pacira will be substantially and irreparably damaged by infringement of the '024 Patent.  Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the

'024 Patent, actively inducing infringement of the '024 Patent, and contributing to the infringement of the '024 Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

588.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product will constitute infringement of one or more claims of the '024 Patent.

## COUNT XXVII: INFRINGEMENT OF THE '047 PATENT BY QILU HAINAN LTD. AND QILU INC.

589.    Pacira incorporates each of the preceding paragraphs 1–588 as if fully set forth herein.

590.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '047 Patent.

591.    Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '047 Patent.

592.    Defendants Qilu Hainan Ltd. and Qilu Inc.'s submission of Qilu's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product in or into the United States before the expiration of the '047 Patent is an act of infringement of the '047 Patent under 35 U.S.C. § 271(e)(2)(A).

593.    If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '047 Patent under 35 U.S.C. § 271(a)-(c).

594.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

595.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States would infringe one or more claims of the '047 Patent.

596.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '047 Patent.

597.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '047 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers,

pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '047 Patent. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '047 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

598.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '047 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '047 Patent and specific intent to infringe that patent.

599.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '047 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '047 Patent immediately and imminently upon approval of Qilu's ANDA.

600.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '047 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '047 Patent.

601.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. constitute and/or will constitute direct infringement of the '047 Patent; active inducement of infringement by others of the '047 Patent; and contribution to the infringement by others of the '047 Patent.

602.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries, filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '047 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.

603.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '047 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '047 Patent; active inducement of infringement by others of the '047 Patent; and/or contribution to the infringement by others of the '047 Patent.   On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '047 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

604.    Pacira will be substantially and irreparably damaged by infringement of the '047 Patent.  Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '047 Patent, actively inducing infringement of the '047 Patent, and contributing to the infringement of the '047 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XXVIII: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '047 PATENT BY QILU HAINAN LTD. AND QILU INC.

605.   Pacira incorporates each of the preceding paragraphs 1–604 as if fully set forth herein.

606.   These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

607.   There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

608.   On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '047 Patent.

609.   Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '047 Patent.

610.   The Defendants Qilu Hainan Ltd. and Qilu Inc. have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import Qilu's ANDA Product before the expiration date of the '047 Patent, including the filing of ANDA No. 220830.

611.   If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '047 patent under 35 U.S.C. § 271(a)-(c).

612.   On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of

Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

613.    The commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States will infringe one or more claims of the '047 Patent.

614.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '047 Patent.

615.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '047 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '047 Patent.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '047 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

616.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '047 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants Qilu

Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '047 Patent and specific intent to infringe that patent.

617.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '047 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '047 Patent immediately and imminently upon approval of Qilu's ANDA.

618.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '047 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '047 Patent.

619.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. will constitute direct infringement of the '047 Patent; active inducement of infringement by others of the '047 Patent; and contribution to the infringement by others of the '047 Patent.

620.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '047 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '047 Patent and without a reasonable basis for

believing that they would not be liable for direct infringement of the '047 Patent; active inducement of infringement by others of the '047 Patent; and/or contribution to the infringement by others of the '047 Patent.  On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '047 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

621.    Pacira will be substantially and irreparably damaged by infringement of the '047 Patent.  Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '047 Patent, actively inducing infringement of the '047 Patent, and contributing to the infringement of the '047 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

622.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product will constitute infringement of one or more claims of the '047 Patent.

## COUNT XXIX: INFRINGEMENT OF THE '483 PATENT BY QILU HAINAN LTD. AND QILU INC.

623.    Pacira incorporates each of the preceding paragraphs 1–622 as if fully set forth herein.

624.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '483 Patent.

625. Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '483 Patent.

626. Defendants Qilu Hainan Ltd. and Qilu Inc.'s submission of Qilu's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product in or into the United States before the expiration of the '483 Patent is an act of infringement of the '047 Patent under 35 U.S.C. § 271(e)(2)(A).

627. If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '483 Patent under 35 U.S.C. § 271(a)-(c).

628. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

629. On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States would infringe one or more claims of the '483 Patent.

630. On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '483 Patent.

631. On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents,

affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '483 Patent. Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '483 Patent. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '483 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

632. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '483 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '483 Patent and specific intent to infringe that patent.

633. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '483 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '483 Patent immediately and imminently upon approval of Qilu's ANDA.

634.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '483 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '483 Patent.

635.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. constitute and/or will constitute direct infringement of the '483 Patent; active inducement of infringement by others of the '483 Patent; and contribution to the infringement by others of the '483 Patent.

636.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries, filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '483 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.

637.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '483 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '483 Patent; active inducement of infringement by others of the '483 Patent; and/or contribution to the infringement by others of the '483 Patent. On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '483 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

638.    Pacira will be substantially and irreparably damaged by infringement of the '483 Patent. Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '483 Patent, actively inducing infringement of the '483 Patent, and contributing to the infringement

of the '483 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XXX: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '483 PATENT BY QILU HAINAN LTD. AND QILU INC.

639.    Pacira incorporates each of the preceding paragraphs 1–638 as if fully set forth herein.

640.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

641.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

642.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '483 Patent.

643.    Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '483 Patent.

644.    The Defendants Qilu Hainan Ltd. and Qilu Inc. have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import Qilu's ANDA Product before the expiration date of the '483 Patent, including the filing of ANDA No. 220830.

645.    If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the

United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '483 patent under 35 U.S.C. § 271(a)-(c).

646.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

647.    The commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States will infringe one or more claims of the '483 Patent.

648.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '483 Patent.

649.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.   On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '483 Patent.   Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '483 Patent.   On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will

encourage acts of direct infringement with knowledge of the '483 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

650.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '483 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '483 Patent and specific intent to infringe that patent.

651.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '483 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '483 Patent immediately and imminently upon approval of Qilu's ANDA.

652.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '483 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '483 Patent.

653.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. will constitute direct infringement of the '483 Patent; active inducement of infringement by others of the '483 Patent; and contribution to the infringement by others of the '483 Patent.

654. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '483 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '483 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '483 Patent; active inducement of infringement by others of the '483 Patent; and/or contribution to the infringement by others of the '483 Patent. On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '483 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

655. Pacira will be substantially and irreparably damaged by infringement of the '483 Patent. Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '483 Patent, actively inducing infringement of the '483 Patent, and contributing to the infringement of the '483 Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

656. Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product will constitute infringement of one or more claims of the '483 Patent.

## <u>COUNT XXXI: INFRINGEMENT OF THE '940 PATENT BY QILU HAINAN LTD. AND QILU INC.</u>

657.    Pacira incorporates each of the preceding paragraphs 1–656 as if fully set forth herein.

658.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '940 Patent.

659.    Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '940 Patent.

660.    Defendants Qilu Hainan Ltd. and Qilu Inc.'s submission of Qilu's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product in or into the United States before the expiration of the '940 Patent is an act of infringement of the '940 Patent under 35 U.S.C. § 271(e)(2)(A).

661.    If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '940 Patent under 35 U.S.C. § 271(a)-(c).

662.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

663.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States would infringe one or more claims of the '940 Patent.

664.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '940 Patent.

665.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '940 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '940 Patent.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '940 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

666.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '940 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants Qilu

Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '940 Patent and specific intent to infringe that patent.

667.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '940 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '940 Patent immediately and imminently upon approval of Qilu's ANDA.

668.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '940 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '940 Patent.

669.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. constitute and/or will constitute direct infringement of the '940 Patent; active inducement of infringement by others of the '940 Patent; and contribution to the infringement by others of the '940 Patent.

670.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries, filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '940 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.

671.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '940 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '940 Patent; active inducement of infringement by others of the '940 Patent; and/or contribution to the infringement by others of the '940 Patent.    On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '940 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

672.    Pacira will be substantially and irreparably damaged by infringement of the '940 Patent.  Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '940 Patent, actively inducing infringement of the '940 Patent, and contributing to the infringement of the '940 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XXXII: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '940 PATENT BY QILU HAINAN LTD. AND QILU INC.

673.    Pacira incorporates each of the preceding paragraphs 1–672 as if fully set forth herein.

674.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

675.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

676. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '940 Patent.

677. Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '940 Patent.

678. The Defendants Qilu Hainan Ltd. and Qilu Inc. have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import Qilu's ANDA Product before the expiration date of the '940 Patent, including the filing of ANDA No. 220830.

679. If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '940 patent under 35 U.S.C. § 271(a)-(c).

680. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

681. The commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States will infringe one or more claims of the '940 Patent.

682. On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '940 Patent.

683.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.   On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '940 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '940 Patent.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '940 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

684.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '940 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '940 Patent and specific intent to infringe that patent.

685.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '940 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and

intend to, and will, contribute to infringement of the '940 Patent immediately and imminently upon approval of Qilu's ANDA.

686.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '940 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '940 Patent.

687.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. will constitute direct infringement of the '940 Patent; active inducement of infringement by others of the '940 Patent; and contribution to the infringement by others of the '940 Patent.

688.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '940 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '940 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '940 Patent; active inducement of infringement by others of the '940 Patent; and/or contribution to the infringement by others of the '940 Patent.  On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '940 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

689.    Pacira will be substantially and irreparably damaged by infringement of the '940 Patent.  Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the

'940 Patent, actively inducing infringement of the '940 Patent, and contributing to the infringement of the '940 Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

690. Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product will constitute infringement of one or more claims of the '940 Patent.

## COUNT XXXIII: INFRINGEMENT OF THE '468 PATENT BY QILU HAINAN LTD. AND QILU INC.

691. Pacira incorporates each of the preceding paragraphs 1–690 as if fully set forth herein.

692. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '468 Patent.

693. Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '468 Patent.

694. Defendants Qilu Hainan Ltd. and Qilu Inc.'s submission of Qilu's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product in or into the United States before the expiration of the '468 Patent is an act of infringement of the '468 Patent under 35 U.S.C. § 271(e)(2)(A).

695.    If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '468 Patent under 35 U.S.C. § 271(a)-(c).

696.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

697.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States would infringe one or more claims of the '468 Patent.

698.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '468 Patent.

699.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '468 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers,

pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '468 Patent. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '468 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

700.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '468 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '468 Patent and specific intent to infringe that patent.

701.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '468 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '468 Patent immediately and imminently upon approval of Qilu's ANDA.

702.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '468 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '468 Patent.

703.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. constitute and/or will constitute direct infringement of the '468 Patent; active inducement of infringement by others of the '468 Patent; and contribution to the infringement by others of the '468 Patent.

704.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries, filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '468 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.

705.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '468 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '468 Patent; active inducement of infringement by others of the '468 Patent; and/or contribution to the infringement by others of the '468 Patent.   On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '468 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

706.    Pacira will be substantially and irreparably damaged by infringement of the '468 Patent.  Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '468 Patent, actively inducing infringement of the '468 Patent, and contributing to the infringement of the '468 Patent, Pacira will suffer irreparable injury.  Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted.  Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XXXIV: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '468 PATENT BY QILU HAINAN LTD. AND QILU INC.

707.    Pacira incorporates each of the preceding paragraphs 1–706 as if fully set forth herein.

708.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

709.    There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

710.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '468 Patent.

711.    Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '468 Patent.

712.    The Defendants Qilu Hainan Ltd. and Qilu Inc. have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import Qilu's ANDA Product before the expiration date of the '468 Patent, including the filing of ANDA No. 220830.

713.    If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '468 patent under 35 U.S.C. § 271(a)-(c).

714.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of

Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

715.    The commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States will infringe one or more claims of the '468 Patent.

716.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '468 Patent.

717.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '468 Patent.  Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '468 Patent.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '468 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

718.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '468 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants Qilu

Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '468 Patent and specific intent to infringe that patent.

719.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '468 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '468 Patent immediately and imminently upon approval of Qilu's ANDA.

720.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '468 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '468 Patent.

721.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. will constitute direct infringement of the '468 Patent; active inducement of infringement by others of the '468 Patent; and contribution to the infringement by others of the '468 Patent.

722.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '468 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '468 Patent and without a reasonable basis for

believing that they would not be liable for direct infringement of the '468 Patent; active inducement of infringement by others of the '468 Patent; and/or contribution to the infringement by others of the '468 Patent. On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '468 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

723. Pacira will be substantially and irreparably damaged by infringement of the '468 Patent. Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '468 Patent, actively inducing infringement of the '468 Patent, and contributing to the infringement of the '468 Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

724. Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product will constitute infringement of one or more claims of the '468 Patent.

## COUNT XXXV: INFRINGEMENT OF THE '142 PATENT BY QILU HAINAN LTD. AND QILU INC.

725. Pacira incorporates each of the preceding paragraphs 1–724 as if fully set forth herein

726. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '142 Patent.

727. Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '142 Patent.

728.    Defendants Qilu Hainan Ltd. and Qilu Inc.'s submission of Qilu's ANDA with a Paragraph IV Certification for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product in or into the United States before the expiration of the '142 Patent is an act of infringement of the '142 Patent under 35 U.S.C. § 271(e)(2)(A).

729.    If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '142 Patent under 35 U.S.C. § 271(a)-(c).

730.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

731.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States would infringe one or more claims of the '142 Patent.

732.    On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling would infringe one or more claims of the '142 Patent.

733.    On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users.  On information and belief,

Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL (Exhibit A) and which, if followed, will infringe claims of the '142 Patent. Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '142 Patent. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '142 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

734. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '142 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval. Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '142 Patent and specific intent to infringe that patent.

735. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '142 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '142 Patent immediately and imminently upon approval of Qilu's ANDA.

736. Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '142 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their

intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '142 Patent.

737.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. constitute and/or will constitute direct infringement of the '142 Patent; active inducement of infringement by others of the '142 Patent; and contribution to the infringement by others of the '142 Patent.

738.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries, filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '142 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product.

739.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '142 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '142 Patent; active inducement of infringement by others of the '142 Patent; and/or contribution to the infringement by others of the '142 Patent. On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '142 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

740.    Pacira will be substantially and irreparably damaged by infringement of the '142 Patent. Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '142 Patent, actively inducing infringement of the '142 Patent, and contributing to the infringement of the '142 Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc.,

a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XXXVI: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '142 PATENT BY QILU HAINAN LTD. AND QILU INC.

741. Pacira incorporates each of the preceding paragraphs 1–740 as if fully set forth herein.

742. These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

743. There is an actual case or controversy such that the Court may entertain Pacira's request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

744. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. submitted or caused submission of Qilu's ANDA to obtain FDA approval for Qilu's ANDA Product in the United States before expiration of the '142 Patent.

745. Qilu's ANDA Product, and the use of Qilu's ANDA Product, are covered by one or more claims of the '142 Patent.

746. The Defendants Qilu Hainan Ltd. and Qilu Inc. have made, and will continue to make, substantial preparation in the United States to manufacture, use, offer to sell, sell, and/or import Qilu's ANDA Product before the expiration date of the '142 Patent, including the filing of ANDA No. 220830.

747. If approved by the FDA, Defendants Qilu Hainan Ltd. and Qilu Inc.'s commercial manufacture, use, importation, sale, and/or offer for sale of Qilu's ANDA Product in or into the United States will directly infringe, contribute to the infringement of, and/or actively induce the infringement of one or more claims of the '142 patent under 35 U.S.C. § 271(a)-(c).

748. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Product in or into the United States immediately and imminently upon approval of Qilu's ANDA.

749. The commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in or into the United States will infringe one or more claims of the '142 Patent.

750. On information and belief, the commercial manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Product in accordance with, and as directed by, its proposed product labeling will infringe one or more claims of the '142 Patent.

751. On information and belief, upon FDA approval of Qilu's ANDA, Defendants Qilu Hainan Ltd. and Qilu Inc. will, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Qilu's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will knowingly and intentionally accompany Qilu's ANDA Product with a product label or product insert that will include instructions for using or administering Qilu's ANDA Product, which are substantially similar to the instructions in the prescribing information for EXPAREL, (Exhibit A), and which, if followed, will infringe the '142 Patent. Accordingly, Defendants Qilu Hainan Ltd. and Qilu Inc. will induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of Qilu's ANDA Product to directly infringe the '142 Patent. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. will encourage acts of direct infringement with knowledge of the '142 Patent and knowledge that Defendants Qilu Hainan Ltd. and Qilu Inc. are encouraging infringement.

752.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, actively induce infringement of the '142 Patent when Qilu's ANDA is approved, and plan and intend to, and will, do so immediately and imminently upon approval.  Defendants Qilu Hainan Ltd. and Qilu Inc.'s activities will be done with knowledge of the '142 Patent and specific intent to infringe that patent.

753.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. know that Qilu's ANDA Product and proposed labeling are especially made or adapted for use in infringing the '142 Patent, that Qilu's ANDA Product is not a staple article or commodity of commerce, and that Qilu's ANDA Product and accompanying proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. plan and intend to, and will, contribute to infringement of the '142 Patent immediately and imminently upon approval of Qilu's ANDA.

754.    Notwithstanding Defendants Qilu Hainan Ltd. and Qilu Inc.'s knowledge of the claims of the '142 Patent, Defendants Qilu Hainan Ltd. and Qilu Inc. have continued to assert their intent to manufacture, use, offer for sale, sell, distribute, and/or import Qilu's ANDA Product with its product labeling in or into the United States following FDA approval of Qilu's ANDA prior to the expiration of the '142 Patent.

755.    The foregoing actions by Defendants Qilu Hainan Ltd. and Qilu Inc. will constitute direct infringement of the '142 Patent; active inducement of infringement by others of the '142 Patent; and contribution to the infringement by others of the '142 Patent.

756.    On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc., in concert with their agents, affiliates, and subsidiaries filed Qilu's ANDA with a Paragraph IV Certification without adequate justification for asserting that the '142 Patent is invalid, unenforceable, and/or not

infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Qilu's ANDA Product. On information and belief, Defendants Qilu Hainan Ltd. and Qilu Inc. have acted with full knowledge of the '142 Patent and without a reasonable basis for believing that they would not be liable for direct infringement of the '142 Patent; active inducement of infringement by others of the '142 Patent; and/or contribution to the infringement by others of the '142 Patent. On information and belief, the direct and indirect infringement by Defendants Qilu Hainan Ltd. and Qilu Inc. of the '142 Patent was and is willful. Defendants Qilu Hainan Ltd. and Qilu Inc.'s conduct renders this case "exceptional" under 35 U.S.C. § 285.

757.    Pacira will be substantially and irreparably damaged by infringement of the '142 Patent. Unless Defendants Qilu Hainan Ltd. and Qilu Inc. are enjoined from directly infringing the '142 Patent, actively inducing infringement of the '142 Patent, and contributing to the infringement of the '142 Patent, Pacira will suffer irreparable injury. Pacira has no adequate remedy at law, and considering the balance of hardships between Pacira and Defendants Qilu Hainan Ltd. and Qilu Inc., a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

758.    Pacira is entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product will constitute infringement of one or more claims of the '142 Patent.

## PRAYER FOR RELIEF

**WHEREFORE**, Pacira respectfully requests the Court to enter judgment in its favor against Defendants:

(a)  That judgment be issued that Defendants WGI and Apotex have infringed the Patents-in-Suit under 35 U.S.C. § 271(e)(2)(A) by submitting ANDA No. 220735 under section 505(j) of

the Federal Food, Drug, and Cosmetic Act, and that the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of WGI's ANDA Product will constitute an act of infringement of the Patents-in-Suit;

(b)  That judgment be issued that Defendants Qilu Hainan Ltd. and Qilu Inc. have infringed the Patents-in-Suit under 35 U.S.C. § 271(e)(2)(A) by submitting ANDA No. 220830 under section 505(j) of the Federal Food, Drug, and Cosmetic Act, and that the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of Qilu's ANDA Product will constitute an act of infringement of the Patents-in-Suit;

(c)  That an order be issued under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of WGI's ANDA No. 220735 shall be a date which is not earlier than the latest expiration date of the Patents-in-Suit, as extended by any applicable period of exclusivity;

(d)  That an order be issued under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of Qilu's ANDA No. 220830 shall be a date which is not earlier than the latest expiration date of the Patents-in-Suit, as extended by any applicable period of exclusivity;

(e)  That an injunction be issued under 35 U.S.C. § 271(e)(4)(B) permanently enjoining Defendants, their officers, agents, servants, employees, licensees, representatives, and attorneys, and all other persons acting or attempting to act in active concert or participation with them or acting on their behalf, from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of any drug product covered by, or drug product whose use is covered by, the Patents-in-Suit;

(f)  That a declaration be issued under 28 U.S.C. § 2201 that the manufacture, use, offer for sale, sale, and/or importation of WGI's ANDA Product before the latest expiration of the Patents-in-Suit does and will infringe the Patents-in-Suit;

(g)  That a declaration be issued under 28 U.S.C. § 2201 that the manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Product before the latest expiration of the Patents-in-Suit does and will infringe the Patents-in-Suit;

(h)  That an order be issued preliminarily and permanently enjoining Defendants and their affiliates, subsidiaries, officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, or acting on their behalf, from infringing the Patents-in-Suit;

(i)  If Defendants WGI and/or Apotex engage in the commercial manufacture, use, offer to sell, sale, or importation of WGI's ANDA Product disclosed in ANDA No. 220735 prior to the latest expiration of the Patents-in-Suit, as extended by any applicable period of exclusivity, judgment awarding Pacira damages resulting from such infringement under 35 U.S.C. § 271(e)(4)(C), increased to treble the amount found and/or assessed together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

(j)  If Defendants Qilu Hainan Ltd. and/or Qilu Inc. engage in the commercial manufacture, use, offer to sell, sale, or importation of Qilu's ANDA Product disclosed in ANDA No. 220830 prior to the latest expiration of the Patents-in-Suit, as extended by any applicable period of exclusivity, judgment awarding Pacira damages resulting from such infringement under 35 U.S.C. § 271(e)(4)(C), increased to treble the amount found and/or assessed together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

(k)  That this case be declared an exceptional case under 35 U.S.C. § 285, and that Pacira be awarded reasonable attorneys' fees and costs;

(l)  That an accounting be performed of Defendants' infringing activities not presented at trial and an award by the Court of additional damages for any such infringing sales; and

(m) That this Court award such other and further relief as it may deem just and proper.

Dated:  November 26, 2025                          Respectfully submitted,

                                             **FISH & RICHARDSON P.C.**

BY:     */s/ Susan E. Morrison*
             Susan E. Morrison (#4690)
             222 Delaware Ave,
             Wilmington, DE 19801
             Telephone: (302) 652-5070
             Facsimile:  (302) 652-0607
             morrison@fr.com

             Michael T. Zoppo (*pro hac vice forthcoming*)
             Jeremy T. Saks (*pro hac vice forthcoming*)
             **Fish & Richardson P.C.**
             7 Times Square, 20th Floor
             New York, NY 10038
             Telephone: (212) 765-5070
             Facsimile: (212) 258-2291
             zoppo@fr.com
             saks@fr.com

             Corrin N. Drakulich (*pro hac vice forthcoming*)
             **Fish & Richardson P.C.**
             1180 Peachtree Street NE, 21st Floor
             Atlanta, GA 30309
             Telephone: (404) 892-5005
             Facsimile: (404) 892-5002
             drakulich@fr.com

             Deanna J. Reichel (*pro hac vice forthcoming*)
             **Fish & Richardson P.C.**
             60 South 6th Street, Suite 3200
             Minneapolis, MN 55402
             Telephone: (612) 335-5070
             Facsimile: (612) 288-9696
             reichel@fr.com

Karrie Wheatley, Ph.D. (*pro hac vice forthcoming*)
**Fish & Richardson P.C.**
909 Fannin Street, Suite 2100
Houston, TX 77010
Telephone: (713) 654-5300
Facsimile: (713) 652-0109
wheatley@fr.com

*Attorneys for Plaintiffs*
*Pacira Pharmaceuticals, Inc. and*
*Pacira BioSciences, Inc.*